COMMONWEALTH of Pennsylvania, Appellee

v.

Hassan AKBAR, Appellant.

Superior Court of Pennsylvania.

Submitted July 22, 2013.

Filed April 30, 2014.

Raymond D. Roberts, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney and Joan Weiner, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: GANTMAN, J.,
DONOHUE, J., and PLATT, J.*

OPINION BY GANTMAN, J.:

Appellant, Hassan Akbar, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for aggravated assault, criminal conspiracy to commit aggravated assault, persons not to possess firearms, and possessing instruments of crime.[1] We affirm Appellant's convictions but vacate the judgment of sentence and remand for resentencing.

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S.A. §§ 2702(a)(1), 903(a)(1), 6105(a)(1), and 907(a), respectively.

The relevant facts and procedural history of this case are as follows. On November 13, 2008, Regina Holmes and Kemp Carter were on their way to Mr. Carter's house. As they approached Mr. Carter's residence, Ms. Holmes noticed a car parked in the street with two black males sitting inside. After Ms. Holmes and Mr. Carter parked their car, they walked toward Mr. Carter's house and noticed that the car parked on the street was gone. When they reached Mr. Carter's house, Appellant and Darnell Lewis came up behind them. Appellant directed Mr. Carter and Ms. Holmes to walk into the house, while Appellant and Mr. Lewis followed. Ms. Holmes and Mr. Carter turned to face the two men and saw they had guns in their hands. Appellant pointed his gun to the ground and fired two shots. Mr. Carter told Ms. Holmes to duck, pushed her into the screen door, and ran away. Mr. Lewis fired approximately six shots at Mr. Carter, shooting him in the stomach. Immediately, Appellant and Mr. Lewis fled the scene, and Ms. Holmes called 911. When police arrived, Ms. Holmes gave a description of the shooters.

Police later received information about a vehicle possibly linked to the shooting. The next day, police located the suspicious vehicle, conducted a traffic stop, and apprehended Mr. Lewis. In custody, Mr. Lewis made a statement to police, and admitted he had participated in the shooting. Mr. Lewis also implicated Appellant, explaining that Appellant knew Mr. Carter was a drug dealer and carried large sums of cash, so Appellant decided he and Mr. Lewis would rob Mr. Carter. Mr. Lewis also explained to police the details of the shooting and implicated Appellant. In the days after the shooting, Ms. Holmes and Mr. Carter identified Appellant and Mr. Lewis in photo arrays. Police obtained an arrest warrant for Appellant and assigned him a "photo number." On December 2,

2008, police apprehended Appellant during a traffic stop.

Procedurally:

On December 2, 2008, [Appellant] was arrested and charged with aggravated assault, criminal conspiracy to commit aggravated assault, robbery, attempted burglary, attempted theft, possession of a firearm by a prohibited person, firearms not to be carried without a license, carrying firearms in public, possessing instruments of crime, terroristic threats, simple assault, and recklessly endangering another person.

On April 5–14, 2010, [the court] conducted a trial in the presence of a jury. [On April 7, 2010, defense counsel moved to sever Appellant's case from that of Mr. Lewis, his co-defendant; and the court denied the motion.] On April 14, 2010, the jury found [Appellant] guilty of aggravated assault, criminal conspiracy, possession of a firearm by a prohibited person and possessing instruments of crime. On July 12, 2010, [the trial court] sentenced [Appellant] to 10 to 20 years' state incarceration on the aggravated assault charge, 10 to 20 years' state incarceration on the conspiracy charge, and 5 to 10 years' on the possession of a firearm by a prohibited person, to run consecutively. [Appellant] was sentenced to no further penalty on the possessing instruments of crime charge. This resulted in an aggregate sentence of 25 to 50 years' state incarceration.

On July 22, 2010, defense counsel ... filed a Post–Sentence Motion, which was subsequently dismissed by operation of law on November 22, 2010. On December 15, 2010, defense counsel filed a Notice of Appeal to the Superior Court. On March 2, 2011, upon receipt of all notes of testimony, [the trial court] ordered that defense counsel file a Concise

Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). However, due to serious illness, counsel did not file a [Rule] 1925(b) statement until May 20, 2011, after an extension had been granted by [the trial court]. (Trial Court Opinion, filed December 6, 2012, at 2–3). Appellant subsequently obtained new counsel for appeal and sought permission to file a supplemental Rule 1925(b) statement. This Court granted Appellant's request on June 8, 2012, and remanded the matter to the trial court for the filing of Appellant's supplemental concise statement. On June 27, 2012, Appellant filed his supplemental Rule 1925(b) statement.

Appellant raises the following issues for our review:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST TO SEVER HIS TRIAL FROM HIS CO–DEFENDANT AND IN REFUSING TO GIVE THE REDACTION REQUESTED BY APPELLANT'S COUNSEL.

THE TRIAL COURT ERRED IN REFUSING TO GIVE A CAUTIONARY INSTRUCTION WHEN OFFICER O'MALLEY PLAYED THE 911 AND POLICE RADIO TAPES.

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A MISTRIAL WHEN THE COMMONWEALTH'S ATTORNEY AND THE TESTIFYING POLICE OFFICER PUT INTO EVIDENCE THAT APPELLANT HAD A PHILADELPHIA PHOTO NUMBER.

THE TRIAL COURT ERRONEOUSLY SENTENCED [APPELLANT] TO TWO MANDATORY MINIMUMS AT SENTENCING.

(Appellant's Brief at 7).

In his first issue, Appellant argues Mr. Lewis' confession to police shifted all of the blame surrounding the November 13, 2008 shooting to Appellant. Appellant acknowledges that the parties redacted Mr. Lewis' statement to remove any direct references to Appellant. Nevertheless, Appellant claims the redacted statement still prejudiced him because the statement included references to another man having a gun, firing a shot, and directing Mr. Lewis' actions. Appellant insists the jury naturally inferred Appellant was the other person described in Mr. Lewis' statement, because Mr. Lewis and Appellant sat side-by-side at trial as the only accused persons. Appellant maintains the other evidence against Appellant, in the absence of Mr. Lewis' statement, was insufficient to convict Appellant of the crimes charged. Appellant avers the court's admission of the redacted statement rises above harmless error, unduly prejudiced him and denied him a fair trial. Appellant concludes the court erred in denying his motion to server, and this Court should remand the case for a new trial separate from Mr. Lewis. We disagree.

 "The decision to sever co-defendants' trials lies within the trial court's discretion, and will not be disturbed absent an abuse thereof." *Commonwealth v. Birdsong*, 611 Pa. 203, 232, 24 A.3d 319, 336 (2011).

Joint trials are favored when judicial economy will be served by avoiding the expensive and time-consuming duplication of evidence, and where the defendants are charged with conspiracy.

[T]he mere fact that there is hostility between defendants, or that one may try to save himself at the expense of another, is in itself not sufficient grounds to require separate trials. In fact, it has been asserted that **the fact that defendants have conflicting versions of what took place, or the**

extents to which they participated in it, is a reason for rather than against a joint trial because the truth may be more easily determined if all are tried together.

*Id.* (internal citations and quotation marks omitted) (emphasis in original).

■■ "Under the Confrontation Clause of the Sixth Amendment, a criminal defendant has a right to confront witnesses against him." *Commonwealth v. Rivera*, 565 Pa. 289, 299, 773 A.2d 131, 137 (2001), *cert. denied*, 535 U.S. 955, 122 S.Ct. 1360, 152 L.Ed.2d 355 (2002). A defendant is deprived of his Sixth Amendment rights when his non-testifying co-defendant's facially incriminating confession is introduced at their joint trial, even if the jury is instructed that the confession can be considered only against the confessing co-defendant. *Id.* Nevertheless, "[i]f a confession can be edited so that it retains its narrative integrity and yet in no way refers to [the non-confessing] defendant, then use of it does not violate the principles of *Bruton* [*v. U.S.*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) ]." [2] *Commonwealth v. Travers*, 564 Pa. 362, 368, 768 A.2d 845, 848 (2001).

In *Travers*, our Supreme Court held that the redaction of a nontestifying co-defendant's confession in a joint trial, which replaced any direct reference to the non-confessing co-defendant with a neutral pronoun, when accompanied by an appropriate cautionary charge, sufficiently protected the non-confessing defendant's Sixth Amendment rights.[3] *Travers, supra* at 372–73, 768 A.2d at 851. The *Travers* Court observed Pennsylvania law is now clear that redacted statements trigger confrontation clause concerns under *Bruton* **only if** the redacted statement **on its face** ties the defendant to the crime, but not if the incrimination arises from linkage to other evidence in the case. *Id.* at 372 n. 2, 768 A.2d at 850 n. 2 (citing *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998)). When the redacted statement is not powerfully incriminating on its face, however, the general rule that jurors can and will follow the court's cautionary jury instructions controls. *Travers, supra.* Moreover, even where a redacted confession violates *Bruton*, its admission might be harmless error if other properly admitted evidence overwhelmingly establishes the defendant's guilt. *Commonwealth v. McGlone*, 716 A.2d 1280, 1284 (Pa.Super.1998), *cert. denied*, 528 U.S. 932, 120 S.Ct. 332, 145 L.Ed.2d 259 (1999).

■■ Instantly, prior to trial, Appellant moved to sever his case from Mr. Lewis' on the ground that Mr. Lewis' statement would be powerfully incriminating against Appellant. The court denied Appellant's motion, but agreed to redact Mr. Lewis' statement to remove direct references to Appellant. At trial, a police witness read the redacted version of Mr. Lewis' statement into the record as follows:

> He told me the person he was waiting on was supposed to have a lot of money on him, he said [he was] going to rob him. He told me the guy was a drug dealer

**2.** In *Bruton*, the United States Supreme Court held that admission of a facially incriminating confession by a non-testifying co-defendant introduced at the defendant and co-defendant's joint trial, deprives a defendant of his Sixth Amendment right to confrontation, even where the court instructs the jury to consider the confession only against the co-defendant.

*Id.* at 135–37, 88 S.Ct. at 1627–28, 20 L.Ed.2d at ——.

**3.** In *Travers*, the direct references to the non-confessing defendant contained in his co-defendant's confession were replaced with the words "the other man."

and sold marijuana. He told me he probably would have about 10–grand on him, he's known to have a bunch of money on him. He said he would give m[e] a breakdown on some of the money. He told me I wouldn't have to do nothing, just stand there and watch his back, make sure nobody like looking around the area. I knew he had a gun on him, I could see the butt of the gun sitting out of his shirt.

The victim drove by [in a] silver Mercedes Benz, pulled into his alleyway. As he was walking around the corner to go to his house he was with a skinny girl, real light skin or white, they were going up the steps. He ran up before me on the steps behind them. I walked over there and I was standing on the steps. He was on the top level of the steps, I was on the bottom level of the steps.

The victim tried to push off and jump off the steps, that's when he started shooting. I ran down off the steps, both of us were running in the same direction. We ran around the corner and we split up. He ran one way, I ran the other. I stood around five to ten minutes, the cop[s] were flying around. I had to wait around because the cops was still in the area. The cops were on the block on the scene, that's when I went to the car and went home.

I went home and got something to eat. I was up for a minute thinking about what happened, probably fell asleep between 3:00 and 4:00 a.m. I was thinking about what happened and was I going to get in trouble for this situation.

(N.T. Trial, 4/8/10, at 30–31). Significantly, the court redacted eighty-six (86) full lines of text from Mr. Lewis' original statement and removed all direct references to Appellant. (*See* N.T. Trial, 4/7/10, at 8–12.) Regarding its decision to deny Appellant's motion to sever, the court reasoned:

> [The trial court] properly denied defense counsel's motion to fully redact a portion of the statement and instead allowed for the pronoun "he" or "the other guy" to be used. Defense counsel conceded that the use of the general pronoun "he" and the term "the other guy" was the appropriate way to handle the redaction of [Appellant's] name throughout the statement.[4] To further ensure that [Appellant's] rights were protected, whole lines that could not be redacted without causing "glaring holes" in the statement were taken out completely. This ensured that the statement flowed seamlessly; therefore, the jury would not automatically assume that there was something in the statement that referred to [Appellant] to which they were not made privy.

(Trial Court Opinion at 18–19). We agree that the court's redaction of Mr. Lewis' statement protected Appellant's Sixth Amendment rights under *Bruton*, when accompanied by the court's **two** cautionary instructions to the jury to consider Mr. Lewis' statement as evidence against only Mr. Lewis, and not as evidence against or implicating Appellant.[5] The jury is pre-

---

4. Although defense counsel agreed with the court that generally use of "he" and "the other guy" would constitute an appropriate method to redact an incriminating statement, because Appellant was only one of two codefendants at trial, counsel maintained that use of "he" and "the other guy" would nevertheless be powerfully incriminating against Appellant in this situation.

5. The court issued the following cautionary instruction during the Commonwealth's case-in-chief: "Yesterday, Detective Mullen, the statement he took from Darnell Lewis, I instructed you that was evidence offered to show that Darnell Lewis made a statement concerning the crimes charged and may be considered by you only as evidence against Darnell Lewis. You may not use the state-

sumed to have followed the court's instructions. *See Travers, supra.*[6]

■ Moreover, the court noted:

In the case at bar, any prejudice to [Appellant] was *de minimus* and the properly admitted uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. The record showed that [Ms.] Holmes testified to seeing both [Appellant] and [Mr.] Lewis with guns in hand. Further, [Ms.] Holmes testified that [Appellant] demanded that all four go inside [Mr.] Carter's home. Additionally, [Ms.] Holmes testified to seeing [Mr.] Lewis shoot at [Mr.] Carter. She testified to her own feeling of fear for both her life and [Mr.] Carter's. [Mr.] Carter was unable to testify as to which man shot him, but he testified that he definitely saw each man with a gun in hand after hearing one of them demand that all four go inside the house and [Appellant] fired a shot at the ground. He testified to being in fear that he would be killed. He further testified that he suffered a gunshot wound through his left flank, left stomach. Therefore, even if the admission of the properly redacted statement was done in error, it was harmless because of overwhelming evidence that both [Mr. Lewis] and [Appellant] participated in the shooting as demonstrated through eyewitness testimony.

(Trial Court Opinion at 20). Additionally, both Ms. Holmes and Mr. Carter identified Appellant in a photo array a few days after the shooting incident. The Commonwealth also introduced evidence at trial expressly refuting Appellant's alibi defense. The record supports the court's sound reasoning that even if the admission of Mr. Lewis' statement somehow violated *Bruton*, admission of the statement nevertheless constituted harmless error due to the other independent, overwhelming evidence that established Appellant's guilt. *See McGlone, supra.* Thus, the court properly denied Appellant's severance motion, and Appellant's first issue on appeal merits no relief. *See Birdsong, supra.*

■ In his second issue, Appellant asserts the Commonwealth introduced two audio tapes at trial from the night of the November 13, 2008 shooting: (1) an anonymous 911 call placed by a woman shortly after the shooting, explaining she had observed a suspicious car parked on the street where the shooting took place between 10:00 p.m. until the time of the shooting; the woman reported the license plate number of the vehicle to police; and (2) a police broadcast recording a call from a police dispatcher to an officer investigat-

---

ment in any way whatsoever [as] evidence against or referring to in any way to [Appellant]. Insofar as it concerns your ultimate consideration of the charges against [Appellant] the statement of Darnell Lewis does not exist." (N.T. Trial, 4/9/10, at 6).

The court issued an additional cautionary instruction after the defense rested, during its final instructions to the jury, as follows: "During the trial I instructed you of the limited basis for your use of the statement made by Darnell Lewis. The statement made by Darnell Lewis may be considered by you only as evidence against Defendant Darnell Lewis.

You must not speculate, guess, conjecture, consider or infer or use the statement in any way whatsoever as evidence against or concerning or referring in any way to [Appellant]. Insofar as concerning your consideration of the charges against [Appellant], the statement of Darnell Lewis does not even exist." (N.T. Trial, 4/13/10, at 88–89).

6. Appellant's contention at trial that the law affords him relief because he was only one of two co-defendants at trial is inaccurate; *Travers* also involved only two co-defendants. *See id.*

ing the crime scene, in which the dispatcher provided the officer with the license plate number given by the woman on the 911 call. Appellant argues these tapes constituted untrustworthy and unreliable evidence. Appellant insists the tapes evidenced Appellant's guilt, and the court improperly admitted them without giving Appellant the opportunity to confront the individuals on the tapes, in violation of Appellant's Confrontation Clause rights under the Sixth Amendment. Appellant also maintains the Commonwealth's position at trial, that it introduced the tapes solely to explain the officers' behavior, is mere pretext because the officers' conduct did not raise an issue of suppression. Appellant concludes the court should have excluded the tapes or, alternatively, issued a cautionary jury instruction; and this Court should reverse. We disagree.

■ Preliminarily, we observe that to preserve a claim of error for appellate review, a party must make a specific objection to the alleged error before the trial court in a timely fashion and at the appropriate stage of the proceedings; failure to raise such objection results in waiver of the underlying issue on appeal. *Commonwealth v. Charleston*, 16 A.3d 505 (Pa.Super.2011), *appeal denied*, 612 Pa. 696, 30 A.3d 486 (2011); *Commonwealth v. Shamsud–Din*, 995 A.2d 1224 (Pa.Super.2010). *See also Commonwealth v. Arroyo*, 555 Pa. 125, 142, 723 A.2d 162, 170 (1999) (explaining if ground upon which objection is based is specifically stated, all other reasons for its exclusion are waived).

Instantly, the Commonwealth introduced at trial a 911 audio recording and a police broadcast from the night of the shooting. Appellant specifically objected to the admission of these tapes as hearsay and asked for a cautionary instruction to the jury to consider the evidence on the tapes only in relation to the officers' ac-

tions or course of conduct as a result of the information provided on the tapes. (*See* N.T. Trial, 4/9/10, at 8–20). Significantly, Appellant did not object on confrontation clause grounds. As a result, Appellant waived his confrontation clause argument on appeal. *See Arroyo, supra; Charleston, supra; Shamsud–Din, supra.*

■ Additionally, Appellant requested a hearsay cautionary instruction at trial, but he cites no authority on appeal to support his assertion that the court's failure to issue the requested instruction constitutes reversible error; and his argument surrounding this claim is woefully undeveloped. Thus, this claim is also waived. *See Commonwealth v. Johnson*, 604 Pa. 176, 985 A.2d 915 (2009), *cert. denied,* — U.S. —, 131 S.Ct. 250, 178 L.Ed.2d 165 (2010) (explaining appellant waives issue on appeal where he fails to present claim with citations to relevant authority or develop issue in meaningful fashion capable of review).

■ Moreover, to the extent Appellant advances his hearsay argument on appeal, the standard of review of a trial court's admission or exclusion of evidence is well established and very narrow:

Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

*Commonwealth v. Montalvo*, 604 Pa. 386, 403, 986 A.2d 84, 94 (2009) (internal citations and quotation marks omitted), *cert. denied,* — U.S. —, 131 S.Ct. 127, 178 L.Ed.2d 77 (2010).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Commonwealth v. Dent*, 837 A.2d 571, 577 (Pa.Super.2003), *appeal denied*, 581 Pa. 671, 863 A.2d 1143 (2004); Pa.R.E. 801(c). Nevertheless, certain out-of-court statements offered to explain the course of police conduct are admissible; such statements do not constitute hearsay because they are offered not for the truth of the matters asserted but merely to show the information upon which police acted. *Dent, supra* at 577–79. *See also Commonwealth v. Cruz*, 489 Pa. 559, 414 A.2d 1032 (1980) (holding content of police radio call did not constitute hearsay where Commonwealth introduced call to explain police conduct and not to prove truth of content of tape).

Instantly, Appellant objected at trial to the Commonwealth's introduction of the 911 call and the police broadcast on hearsay grounds. The Commonwealth maintained it introduced the recordings to show how police obtained information regarding the suspicious vehicle and the officers' subsequent conduct. The court accepted the Commonwealth's position and overruled the hearsay objection. We see no reason to disrupt the court's evidentiary ruling. *See Montalvo, supra.*

In his third issue, Appellant asserts the Commonwealth presented testimony from Officer Ayres indicating that another officer had provided him with Appellant's "photo number" during the course of the investigation.[7] Appellant argues the jury inferred from the reference to his photo number that Appellant had a criminal record, which prejudiced Appellant's case. Appellant explains he objected to the officer's statement and immediately moved for a mistrial, but the court overruled his objection and denied the motion. Appellant concludes the court's denial of Appellant's motion for a mistrial was improper, and this Court should grant Appellant a new trial. We disagree.

Our standard of review of a court's denial of a motion for mistrial is as follows:

A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

*Commonwealth v. Tejeda*, 834 A.2d 619, 623 (Pa.Super.2003) (internal citations and footnote omitted).

"[N]ot every reference to a photographic identification of the accused is *per se* prejudicial." *Commonwealth v. Davis*, 861 A.2d 310, 322 (Pa.Super.2004), *appeal denied*, 582 Pa. 708, 872 A.2d 171 (2005). "[R]eferences to photographs or prior po-

**7.** Appellant insists, "There is no doubt that someone on the jury knows that a Philadelphia Photo Number most likely means that the defendant has prior convictions. It is hard to believe that there is a person in Philadelphia much less a conglomeration of twelve who does not have a friend, [acquaintance, or] relative who has not come in contact with the criminal justice system either through police officers or defendants either directly or indirectly[,]" and that "[e]veryone in Philadelphia understand[s] that a Philadelphia Photo Number means that you have a mugshot." (Appellant's Brief at 32, 37). As Appellant provides absolutely no support for his bald assertions, we will give this particular aspect of his claim no further attention. *See Johnson, supra.*

lice contact [do] not constitute prejudicial error unless the references or statements imply prior criminal conduct." *Id. See also Commonwealth v. Young,* 578 Pa. 71, 849 A.2d 1152 (2004) (holding court properly denied defendant's motion for mistrial based on testimony by detective that police showed eyewitness photographs of individuals who had prior contact with police, and eyewitness identified appellant, who had "Police Photo Number 775"; detective's reference to individuals' prior contact with police did not reasonably imply prior criminal conduct where prior contact with police could have occurred under variety of circumstances which were not criminal in nature including involvement with police as witness to or victim of crime; detective's mention of appellant's photo number was mere passing reference that did not imply prior criminal conduct by appellant).

Instantly, the Commonwealth questioned Officer Ayers about the report he had received before arresting Appellant. Officer Ayers referenced Appellant's "photo number" as follows:

[THE COMMONWEALTH]: Did you receive information prior to December 2nd, 2008, of an arrest warrant that had been generated for [Appellant]?

[OFFICER AYERS]: Yes.

[THE COMMONWEALTH]: Do you see that individual sitting in the courtroom here today, sir?

[OFFICER AYERS]: Yes, the gentleman in the white cream shirt.

[THE COMMONWEALTH]: Indicating for the record, Police Officer Ayres identified [Appellant].

[THE COMMONWEALTH]: Did you have contact with [Appellant] prior to December 2008?

[OFFICER AYERS]: That's correct. I did receive information of Detective Valentine of Southwest Detectives in reference to a warrant that was issued for

[Appellant] from the captain in the 12th District.

[THE COMMONWEALTH]: Did he show you a picture of [Appellant]?

[OFFICER AYERS]: He gave me a copy of his photo number.

(N.T. Trial, 4/9/10, at 38–39). Counsel immediately objected after this exchange and moved for a mistrial, which the court denied.

The trial court addressed Appellant's claim as follows:

There was no error committed when this court denied [Appellant's] motion for a mistrial when a police officer testified that [Appellant] had a photo number.

\* \* \*

In the case at bar, Officer Ayers testified that he recovered [Appellant's] photo number from Detective Valentine.... A juror would not reasonably infer from the words "photo number" that [Appellant] had engaged in prior criminal activity. As this [c]ourt stated during the trial, "photo number" could reference an administrative, bookkeeping number related to a warrant.... Accordingly, this [c]ourt properly denied [Appellant's] motion for a mistrial.

(Trial Court Opinion at 22–23). We agree that the jury could not reasonably infer from Officer Ayers' passing reference to Appellant's "photo number" that Appellant had a prior criminal record. *See Young, supra.* The record makes clear Officer Ayers' reference to Appellant's "photo number" related to the arrest warrant for Appellant's instant crimes, and not any previous criminal behavior. Thus, we see no reason to disturb the court's decision to deny Appellant's motion for a mistrial on this ground. *See Tejeda, supra.*

In his fourth issue, Appellant asserts the court imposed a mandatory minimum ten

(10) year sentence for his aggravated assault conviction per 42 Pa.C.S.A. § 9714(a)(1) (also known as the "second strike" provision) (providing for mandatory minimum ten year sentence for defendant convicted of crime of violence, if at time of commission of current offense, defendant had previously been convicted of crime of violence). Likewise, Appellant explains the court imposed a consecutive "second strike" mandatory minimum ten (10) year sentence for his conspiracy to commit aggravated assault conviction. Appellant argues the law in this jurisdiction strictly prohibits a court from imposing a second strike sentence under Section 9714(a)(1), and an additional mandatory minimum sentence in the same case per 42 Pa.C.S.A. § 9714(a)(2) (also known as the "third strike" provision) (providing for mandatory minimum twenty-five year sentence for defendant convicted of crime of violence, if at time of commission of current offense, defendant had previously been convicted of two or more crimes of violence arising from separate criminal transactions). Appellant maintains the reasoning behind the prohibition on imposing a second strike and a third strike mandatory minimum sentence in the same case is to afford a defendant an opportunity for reform before imposing a subsequent strike. By this logic, Appellant insists the court also cannot impose **two second strike** mandatory minimum sentences in the same case, as the court did here, because Appellant had no opportunity for reform before imposition of the consecutive second strike sentence. Appellant concludes the court's imposition of two mandatory minimum second strike sentences under Section

9714(a)(1) was improper, and this Court must remand for resentencing.[8] For the following reasons, we agree with Appellant's position.

 Our standard of review is as follows:

> Generally, a challenge to the application of a mandatory minimum sentence is a non-waiveable challenge to the legality of the sentence. Issues relating to the legality of a sentence are questions of law, as are claims raising a court's interpretation of a statute. Our standard of review over such questions is *de novo* and our scope of review is plenary.

*Commonwealth v. Hawkins*, 45 A.3d 1123, 1130 (Pa.Super.2012), *appeal denied*, 617 Pa. 629, 53 A.3d 756 (2012) (quoting *Commonwealth v. Brougher*, 978 A.2d 373, 377 (Pa.Super.2009)). "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated." *Commonwealth v. Watson*, 945 A.2d 174, 178–79 (Pa.Super.2008).

The Pennsylvania Sentencing Code provides, in relevant part, as follows:

**§ 9714. Sentences for second and subsequent offenses**

**(a) Mandatory Sentence.—**

(1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of

---

**8.** This precise issue is currently pending before the Pennsylvania Supreme Court. *See Commonwealth v. Fields*, 29 A.3d 847 (Pa.Super.2011) (unpublished memorandum), *appeal granted*, 619 Pa. 398, 64 A.3d 628 (2013) (granting petition for allowance of appeal to determine whether imposition of four, consecutive second strike sentences under Section 9714(a)(1) is illegal, where sentences arose from single criminal episode and defendant had no opportunity for reform before imposition of each serial second strike sentence).

this title or other statute to the contrary. Upon a second conviction for a crime of violence, the court shall give the person oral and written notice of the penalties under this section for a third conviction for a crime of violence. Failure to provide such notice shall not render the offender ineligible to be sentenced under paragraph (2).

(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required. Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.

42 Pa.C.S.A. § 9714(a)(1), (a)(2). Section 9714(g) expressly lists aggravated assault under Section 2702(a)(1) and conspiracy to commit aggravated assault under Section 2702(a)(1) as crimes of violence for purposes of the statute. *See* 42 Pa.C.S.A. § 9714(g).

▮ Pennsylvania law makes clear Section 9714 espouses the recidivist philosophy. *Commonwealth v. Shiffler*, 583 Pa. 478, 493, 879 A.2d 185, 194 (2005); *Commonwealth v. Ford*, 947 A.2d 1251 (Pa.Super.2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008); *Commonwealth v. Merolla*, 909 A.2d 337 (Pa.Super.2006); *Commonwealth v. Bell*, 901 A.2d 1033 (Pa.Super.2006), *appeal denied*, 592 Pa. 757, 923 A.2d 409 (2007). "In cases of recidivism, [the Court expects] the following sequence of events: first offense, first conviction, first sentencing, second offense, second conviction, second sentencing." *Commonwealth v. Dickerson*, 533 Pa. 294, 299, 621 A.2d 990, 992 (1993). When closely examining the statutory language of Section 9714, it "reveals that the legislature intended to apply sentencing enhancements for all crimes arising from a criminal transaction, rather than for each individual crime within such transaction." *Commonwealth v. McClintic*, 589 Pa. 465, 481, 909 A.2d 1241, 1251 (2006). "Following the recidivist logic, **each strike that serves as a predicate offense must be followed by sentencing and, by necessary implication, an opportunity for reform, before the offender commits the next strike.**" *Id.* at 483, 909 A.2d at 1252 (emphasis added).

Moreover, "[t]he point of sentence enhancement is to punish more severely offenders who have persevered in criminal activity **despite the theoretically beneficial effects of penal discipline...**." *Shiffler, supra* at 494, 879 A.2d at 195 (emphasis in original). "Particularly salient here is the implicit link between enhanced punishment and behavioral reform, and the notion that the former should correspondingly increase along with a defendant's foregone opportunities for the latter." *Id.*

▮ Instantly, following a single criminal episode, the court imposed two second strike sentences under Section 9714(a)(1): a ten (10) year mandatory minimum sentence for Appellant's aggravated assault conviction; and a consecutive ten (10) year mandatory minimum sentence for Appellant's criminal conspiracy conviction.[9] Un-

9. The parties stipulated at sentencing that Ap- pellant had a previous conviction for a crime

der the applicable legislation, as well as the recidivist philosophy associated with the statute, Appellant should not have received an enhanced sentence for the criminal conspiracy conviction, where Appellant had no intervening opportunity to reform between the aggravated assault offense and the criminal conspiracy offense. *See McClintic, supra; Shiffler, supra; Dickerson, supra;* 42 Pa.C.S.A. § 9714. Pursuant to this law, the trial court had statutory authority to impose one second-strike sentence for only one of Appellant's convictions, but it lacked authority to impose a second enhanced sentence for any of the other convictions, absent an intervening opportunity to reform. *See McClintic, supra; Shiffler, supra.* Thus, Appellant's sentence is illegal and must be vacated. *See Watson, supra.* Upon remand, the court shall impose one second-strike sentence for only one of Appellant's convictions and shall not impose another sentence per Section 9714 on any of the other convictions. Based on the foregoing, we affirm Appellant's convictions but vacate the judgment of sentence and remand for resentencing.

Judgment of sentence vacated; case remanded for resentencing. Jurisdiction is relinquished.

of violence as defined in Section 9714(g). We are mindful of the United States Supreme Court's decision in *Alleyne v. United States,* —— U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), in which the Court held that any fact that increases a mandatory minimum sentence for a crime is an "element" of the crime, not a "sentencing factor," that must be submitted to the fact-finder. *See id.* The *Alleyne* Court, however, noted: "In *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), we recognized a narrow exception to [the] general rule for the fact of a prior conviction. Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today." *Alleyne, supra* at —— n. 1, 133 S.Ct. at 2160 n. 1. No Pennsylvania case has applied *Alleyne* to sentences enhanced solely by prior convictions. Therefore, we see no issue implicating the legality of Appellant's sentence based on *Alleyne,* particularly in light of the parties' stipulation.