J.S52012/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JEFFREY GAYNOR, | : | |
| | : | |
| Appellant | : | No. 1161 EDA 2013 |

Appeal from the Judgment of Sentence January 29, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0015282-2010

BEFORE: GANTMAN, P.J., ALLEN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED MARCH 10, 2015**

Appellant, Jeffrey Gaynor, appeals from the judgment of sentence entered in the Philadelphia Court of Common Pleas following his jury conviction of fourteen counts of cruelty to animals.[1] He raises nine issues, pertaining to claims of trial counsel's ineffective assistance, the denial of his suppression motion, the admission of evidence of a prior bad act, the sufficiency and weight of the evidence, the discretionary aspects of his

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 5511(c)(1) ("A person commits an offense if he wantonly or cruelly illtreats, . . . beats, otherwise abuses any animal, or neglects any animal as to which he has a duty of care . . . or deprives any animal of necessary sustenance, drink, shelter or veterinary care, or access to clean and sanitary shelter which will protect the animal against inclement weather and preserve the animal's body heat and keep it dry.").

sentence, including the restitution imposed, and the denial of his request for bail pending appeal. We find most of his issues waived and the remaining meritless. We thus affirm.

Preliminarily, we *sua sponte* consider the timeliness of this appeal. *See Commonwealth v. Patterson*, 940 A.2d 493, 497 (Pa. Super. 2007). "Jurisdiction is vested in the Superior Court upon the filing of a timely notice of appeal." *Id.* Appellant was represented at trial and sentencing by James Marsh, Esq. On January 29, 2013, the court imposed sentence. On the following day, Appellant filed a timely motion for reconsideration of sentence, challenging only his sentence. *See* Pa.R.Crim.P. 720(A)(1) ("[A] written post-sentence motion shall be filed no later than 10 days after imposition of sentence."). The trial court held a hearing the same day, which Appellant did not attend,[2] and denied the motion on the record. N.T., 1/30/13, at 7-8. However, there is no written order in the record and no docket entry for a written order. *See* Pa.R.Crim.P. 720(B)(3)(d) ("If the judge denies the post-sentence motion, the judge promptly shall issue an order and the order shall be filed and served as provided in Rule 114."), 720(B)(4)(a) (requiring order denying post-sentence motion, whether issued by judge or entered by clerk of courts, to include notice to defendant of right to appeal and time limits within which appeal must be filed).

---

[2] *See* N.T. Post Sentence Mot., 1/30/13, at 3.

Pursuant to Rule 720(A)(2), Appellant had thirty days, or until Friday, March 1, 2013, to file a notice of appeal. *See* Pa.R.Crim.P. 720(A)(2)(a) ("If the defendant files a timely post-sentence motion, the notice of appeal shall be filed . . . within 30 days of the entry of the order deciding the motion."). On February 22, 2013, however, Appellant filed, with new counsel Kenneth A. Young, Esq.,[3] a "Supplemental Post Sentence Motion and/or Bail Pending Appeal," which raised ineffective assistance of trial counsel claims. The trial court held a hearing on April 10, 2013, and denied the motion. Appellant filed a notice of appeal on April 17th and, subsequently, a court-ordered Pa.R.A.P. 1925(b) statement.

In this appeal, neither the parties nor the trial court address the timeliness of the notice of appeal. We note, however, that at the hearing on Appellant's second post-sentence motion, the Commonwealth argued the February 22, 2013 motion was untimely under Rule 720 because it was filed more than ten days after the imposition of sentence. N.T. Mot., 4/10/13, at 8-9. Attorney Young questioned whether the court "officially denied" the first post-sentence motion. *Id.* at 10. The court responded that it had denied it at the bar of the court, the docket should show the motion was denied, but the court would "go by the docket." *Id.* at 10. The court then denied the second post-sentence motion and stated Appellant could file an

---

[3] Attorney Young continues to represent Appellant in this appeal.

appeal within thirty days of that day. ***Id.*** at 13.

We agree with the Commonwealth's assertion—that Appellant's February 22, 2013 motion was untimely under Rule 720 because it was filed more than ten days after the January 29th imposition of sentence. ***See*** Pa.R.Crim.P. 720(A)(1). We add that Appellant's April 17, 2013 notice of appeal was filed more than thirty days after the court's January 30th denial of his first post-sentence motion. ***See*** Pa.R.Crim.P. 720(A)(2)(a). However, we hold that the lack of a written order memorializing the court's denial of the first post-sentence motion, as well as the attendant lack of written notice to Appellant of his appeal rights and the time limits for taking an appeal, are "breakdowns" that excuse the otherwise untimeliness of this appeal.[4] ***See*** Pa.R.Crim.P. 720(B)(4)(a); ***Patterson***, 940 A.2d at 498-99 (stating that generally, appellate court cannot extend time for filing appeal, but may grant relief where there is breakdown in processes of trial court, and noting we have found breakdown where clerk of courts did not enter order notifying defendant his post-sentence motion was denied by operation of law in contravention of Rule 720). Accordingly, we decline to quash this appeal.

On November 21, 2010, Philadelphia police officers, as well as an officer from the Pennsylvania Society for the Prevention of Cruelty to Animals ("SPCA"), were called to Appellant's house, a rowhome in the

---

[4] There was also no oral advisement to Appellant of his appellate rights at the January 30, 2013 hearing.

southwest section of the City of Philadelphia. Four dogs were taken from the yard and eighteen from the basement; all were pit bull terriers. He filed a motion to suppress evidence, which was denied after a hearing on June 20, 2012.

The case proceeded to a jury trial commencing December 3, 2012. The Commonwealth's theory was that Appellant was breeding dogs for dog fighting. **See** N.T. Sentencing, 1/29/13, at 22.[5] Appellant testified in his own defense. The jury found him guilty of fourteen counts of cruelty to animals, each graded a summary offense.

On January 29, 2013, the trial court imposed sentence as follows. On four counts of cruelty to animals, the court imposed an aggregate term of 180 to 360 days' imprisonment, a consecutive 900 days' probation, total fines of $700 and restitution to the SPCA of $72,800.[6] On the following day,

---

[5] The parties' opening and closing arguments at trial were not transcribed. **See** N.T. Trial, 12/5/12, at 95.

[6] The court's sentence was imposed as follows: (1) on four counts of cruelty to animals, consecutive terms each of 45 to 90 days' imprisonment; and (2) on the remaining ten counts, consecutive terms each of 90 days' probation. The court also imposed the mandatory minimum of $50 on all fourteen counts of cruelty to animals. We note that although the sentencing transcript and written sentencing order indicate the total fine is $700, the trial docket states the total fine is $7,000.

In imposing restitution, the court heard from the Commonwealth that after the dogs were removed from Appellant's home on the day of arrest, Appellant never relinquished his rights to them, and thus the dogs could not be adopted. N.T., 1/29/13, at 7. Appellant did not deny this. **Id.** at 21 ("I didn't know I was able to do that."). The Commonwealth further averred

Appellant, via Attorney Marsh, filed a motion for reconsideration of sentence. The court held a hearing the same day and denied relief.[7]

The next document in the record is Appellant's supplemental post-sentence motion, filed on February 22, 2013, by Attorney Young.[8] This motion alleged several instances of trial counsel's ineffectiveness. The court held a hearing on April 10th and heard some argument on the claim that counsel was ineffective for not calling character witnesses who would have testified to Appellant's reputation for truthfulness. N.T., 4/10/13, at 13-16. The Commonwealth argued Appellant's claims should be deferred to Post Conviction Relief Act[9] ("PCRA") proceedings, and the court declined to hold an evidentiary hearing.

Appellant took this appeal and filed a court-ordered Pa.R.A.P. 1925(b) statement. Subsequently, on June 21, 2013, Appellant filed a "Motion for Early Parole," arguing his family depended on his financial, physical, and

---

that at the time of sentencing, the SPCA had sheltered, fed, and provided medical treatment to the dogs for two years and two months. *Id.* at 12. The court assessed the cost of monthly care per dog at $200 and multiplied this figure for fourteen dogs and twenty-two months, to arrive at a total of $72,800. *Id.* at 13.

[7] As stated above, Appellant did not attend this hearing.

[8] Neither the certified record nor the docket indicates when Attorney Marsh withdrew from representation and when Attorney Young entered his appearance.

[9] 42 Pa.C.S. §§ 9541-9546.

emotional support. The docket includes an entry that the court granted it and ordered that he be paroled on July 27, 2013.[10]

Appellant presents nine claims for our review, relating to: (1) the denial of his claims of ineffective assistance of counsel; (2) the denial of his motion to suppress evidence; (3) the admission of "dog fighting material at trial;" (4) the sufficiency of the evidence; (5) the weight of the evidence; (6) the court's alleged failure, when imposing sentence, to consider the exhibits he submitted documenting his medical condition; (7) the alleged excessiveness of his sentence; (8) the restitution imposed; and (9) the denial of his motion for bail pending appeal.[11] Appellant's Brief at 5, 23. We find some of these issues waived and the remainder meritless.

Appellant's first claim is that the court erred in denying relief on his claim that trial counsel was ineffective for failing to: (1) call character witnesses to testify about his truthfulness; and (2) call fact witnesses who would have testified they "personally observed [his] interactions with this dogs, the sanitary conditions of the dogs and their housing, the cause of the liquid to accumulate in . . . the basement." *Id.* at 11. Appellant cites the 2003 decision in ***Commonwealth v. Celestin***, 825 A.2d 670 (Pa. Super. 2003), for the proposition that when a defendant raises ineffectiveness

---

[10] There is no corresponding order in the certified record.

[11] For ease of disposition we have reordered Appellant's issues.

claims in a post-sentence motion, the court may address them. We find no relief is due.

On October 30, 2013, our Supreme Court issued its decision in ***Commonwealth v. Holmes***, 79 A.3d 562 (Pa. 2013). Although this decision post-dated the April 10, 2013 hearing before the trial court, we find it controls this matter. The ***Holmes*** Court held that "***Grant's***[12] general rule of deferral to PCRA review remains the pertinent law on the appropriate timing for review of claims of ineffective assistance of counsel[.]" ***Id.*** at 563. The Court, however, recognized two exceptions, "both falling within the discretion of the trial judge." ***Id.*** The first exception was for "extraordinary circumstances where a discrete claim . . . of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice[.]" ***Id.*** Under the second exception, the PCRA court has discretion to hear claims "only if (1) there is good cause shown" and (2) the defendant makes a "knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA.[ ]" ***Id.*** at 564.

In the case *sub judice*, the trial court's opinion addresses the merits of

---

[12] ***Commonwealth v. Grant***, 813 A.2d 726 (Pa. 2002).

Appellant's ineffectiveness claims. Trial Ct. Op., 9/9/13, at 8-9. However, we affirm the denial of relief pursuant to **Holmes**.[13] Appellant does not argue—nor would we find—that his ineffectiveness claims are of such extraordinary magnitude warranting immediate consideration as to fall within the first exception. **See id.** The second exception likewise does not apply, as Appellant made no express waiver of future PCRA review of the instant convictions and sentence. **See id.** Accordingly, we deny relief without prejudice for Appellant to raise any cognizable claims in a timely PCRA petition. **See** 42 Pa.C.S. §§ 9543, 9545.

Appellant's second claim on appeal is that the court erred in denying his motion to suppress evidence. He avers the police illegally entered his home without a warrant and then illegally obtained evidence which was the basis for their application for a search warrant. His sole argument in support is that there were no exigent circumstances, no danger to police, and no possibility that evidence would be destroyed before a search warrant could be issued. Appellant's Brief at 18, 20, 21. We find no relief is due.

We note:

> Our analysis of [a suppression ruling] begins with the presumption that where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. If the trial court denies the

---

[13] "[W]e may affirm the PCRA court's decision on any basis." **Commonwealth v. Callahan**, 101 A.3d 118, 123-24 (Pa. Super. 2014) (citation omitted).

motion, we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. In so doing, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Bowmaster*, 101 A.3d 789, 792 (Pa. Super. 2014) (citation omitted). "Further, '[i]t is within the suppression court's sole province as fact finder to pass on the credibility of witnesses and the weight to be given their testimony.'" *Commonwealth v. Gillespie*, 103 A.3d 115, 118 (Pa. Super. 2014) (citation omitted).

It is well established that "probable cause alone will not support a warrantless search or arrest in a residence . . . unless some exception to the warrant requirement is also present. . . . [A]bsent **consent or exigent circumstances**, private homes may not be constitutionally entered to conduct a search or to effectuate an arrest without a warrant, **even** where probable cause exists."

*Bowmaster*, 101 A.3d at 793 (some emphasis added) (citation omitted); *see also Commonwealth v. Simmen*, 58 A.3d 811, 816-17 (Pa. Super. 2012) (noting federal and Pennsylvania constitutions permit third party consent to search premises).

In the instant appeal, Appellant's brief wholly ignores the trial court's finding that he consented to the search of his home. We determine the record supports this factual finding and the court's legal conclusions. *See*

***Bowmaster***, 101 A.3d at 792. At the suppression hearing, Philadelphia Police Officer Eric Riddick testified to the following. He responded to a radio call about gunshots inside Appellant's two-story rowhome.[14] N.T. Mot., 6/20/12, at 7. There were "at least six" officers in the front of the home. ***Id.*** at 9. One officer knocked on the front door, while Officer Riddick and another officer went to the rear of the home, by walking to the end of the street, turning right, and walking "up the alleyway." ***Id.*** at 9. From the alleyway, Officer Riddick observed Appellant inside the fenced yard, "washing off two dogs," one of which "appeared to have fresh injuries" and open wounds. ***Id.*** at 10. The officer directed Appellant to go to the front of the house and that police were knocking on the front door. ***Id.*** Appellant went to the front of the property, and when Officer Riddick was notified the front door was open, he "went around to the front of the house." ***Id.*** at 11.

The following exchange occurred at the suppression hearing:

> [Officer Riddick:] I told [Appellant] that we had a report [of] gunshots coming from inside this house. He responded, There's nobody in here shooting. At that time **we were admitted in** so we could make a further check of everybody. . . .
>
> [Commonwealth:] You said you were admitted inside? Who admitted you inside?
>
> A. [Appellant.]

---

[14] Officer Riddick also testified that upon investigation, the officers determined no one was injured and no one in the house had a gun. N.T., 6/20/12, at 15.

Q How did he do that? Did he say anything?

A Yeah. He told me to come in.

\* \* \*

A . . . But **he told us we could come in and check to make sure nobody was injured inside the house or nobody with a weapon.**[15]

*Id.* at 12-13 (emphases added).

Appellant testified at the suppression hearing as follows. While he was in his back yard washing his dog, a police officer arrived and ordered him to put down the hose. Another officer "was climbing the gate with his gun drawn" and "[t]hey jump the gate" and "start petting the dogs." *Id.* at 63. The officers handcuffed Appellant and took him into his house while "other officers were coming through." *Id.* at 63-64. Appellant denied inviting the police into his house. *Id.* at 65. Appellant's wife also testified that officers "came over the gate" and brought Appellant "through the house" in the handcuffs. *Id.* at 51. She stated the officers opened the front door and that neither she nor Appellant invited them inside. *Id.* at 50, 52.

The trial court believed the testimony of Officer Riddick, and this Court is bound by the trial court's credibility determinations. *See Gillespie*, 103 A.3d at 118. In light of the record, we do not disturb the court's finding that Appellant consented to the search of his home. As he does not contest the

---

[15] On cross-examination, Officer Riddick testified that neither Appellant nor his wife signed a consent for police to enter the residence. N.T., 6/20/13, at 20-21.

finding that the officers had probable cause to enter the home, **see** Trial Ct. Op. at 15, we affirm the denial of his suppression motion.

Appellant's third claim is that the court erred in denying his motion to preclude "dog fighting material at trial, which was dated[,] absolutely irrelevant" and "severely prejudic[ial]" to him. Appellant's Brief at 23. Appellant does not identify the "material," but maintains the Commonwealth sought to present it under the "common scheme" exception to the general rule precluding evidence of prior bad acts.[16] Although Appellant's brief sets forth relevant legal authority, the only argument is that the evidence was prejudicial and the passage of more than ten years "was too long of a period for allegations that [he] had somehow previously been involved in dog fighting to be admitted at trial." Appellant's Brief at 23, 25, 26. We find this issue is waived.

An appellant waives an issue on appeal if he fails to present the claim with citations to relevant authority or develop the issue in meaningful

---

[16] The prior version of Pennsylvania Rule of Evidence 404(b)(1), in effect at the time of the 2012 trial, provided: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Pa.R.E. 404(b)(1), *subs. rescinded & replaced*, Jan. 14, 2013, *eff.* Mar. 18, 2013. Subsection (b)(2) set forth the exception: "Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Pa.R.E. 404(b)(2), *subs. rescinded & replaced*, Jan. 14, 2013, *eff.* Mar. 18, 2013. Subsection (b)(3) provided that in a criminal case, evidence of other crimes, wrongs or acts may be admitted "only upon a showing that the probative value of the evidence outweighs its potential for prejudice." Pa.R.E. 404(b)(3), *subs. rescinded & replaced*, Jan. 14, 2013, *eff.* Mar. 18, 2013.

fashion capable of review. ***Commonwealth v. Akbar***, 91 A.3d 227, 235 (Pa. Super. 2014). In addition, "to preserve a claim of error for appellate review, a party must make a specific objection to the alleged error before the trial court in a timely fashion." ***Id.*** If an objection to evidence is made on a specific ground, "all other reasons for its exclusion are waived." ***Id.*** (citation omitted).

As stated above, Appellant does not identify the evidence that he now challenges. The trial court opinion explained:

> Immediately prior to the commencement of trial, [Appellant] presented [an oral] Motion in Limine seeking to prohibit the Commonwealth from introducing a video clip taken from a VHS tape, labeled "[Appellant's] dogs, taken from [Appellant's] bedroom. The proposed video clip shows [Appellant] participating in a dog fight in the basement of his home at some time prior to his arrest. After a hearing, the Court denied [Appellant's] motion. . . .

Trial Ct. Op. at 15-16 (citing N.T. Trial, 12/4/12, at 10, 16-19).

To the extent Appellant argues the evidence was prejudicial, we find this claim waived for failure to present any supportive discussion. Instead, Appellant advances only a bald, conclusory statement that the evidence was prejudicial. ***See Akbar***, 91 A.3d at 235.

We find Appellant's second argument, that the videotape was too old, is waived for failure to raise it before the trial court. Appellant's entire argument against the videotape at trial was, verbatim:

> Your Honor, not only now that the Commonwealth has labeled that they are going under, I guess it's (b)2,

> evidence of other crimes, wrongings [sic], we have to get to 404(b)3,[17] and the rule may be admitted in a criminal case upon that it shows [sic] that the probative value of the evidence outweighs its potential. It's possible for prejudice [sic]. I would suggest that if we're limiting it, there's other ways to prove identity. Only one arrested in the house. I think we're just trying to bootstrap things when it shouldn't be in there and there's potential for prejudice.
>
> We're not here for dog fighting. Let's try the evidence, not try a case from 1997. That's where we're going to here. Thank you.

N.T., 12/4/12, at 24.

Although defense counsel's argument is not entirely clear, it appears to reference someone's identity and urge the court not to try Appellant for acts committed in 1997. Although the latter comment alludes to a prior date, we find it is not sufficient to preserve a claim that the prior bad act was too remote in time to be relevant to the instant charges. **See Akbar**, 91 A.3d at 235.

We address Appellant's next two issues together—the sufficiency and weight of the evidence. First, his argument section on the sufficiency of the evidence includes the relevant standard of review and general discussion about circumstantial evidence, but fails to even mention the crimes of which Appellant was convicted, let alone discuss their elements. Instead, the sole

---

[17] Rule of Evidence 404(b)(3) provides, "In a criminal case the prosecutor must provide reasonable notice . . . of the general nature of any such evidence the prosecutor intends to introduce at trial." Pa.R.E. 404(b)(3).

argument is that "Appellant was convicted on speculation," "[t]here were no facts submitted at trial that proved [he] was guilty of the crimes charged[,]" and "[t]he Jury issued its verdict based on alleged circumstantial evidence which did not meet the elements of the crimes charged and which certainly created extreme reasonable doubt." Appellant's Brief at 35.

The next section, pertaining to the weight of the evidence, likewise sets forth the relevant standard of review. However, after careful review, we discern the sole argument is that there were no witnesses "who testified with any certainty" that they saw him commit the crimes of cruelty to animals.[18] *Id.* at 35, 38. Neither section sets forth the statutory definition of or any legal authority discussing the elements of cruelty to animals.[19]

Because the purported challenge to the sufficiency of the argument is vague and fails to address, let alone set forth, any of the elements of cruelty to animals, we find the issue is waived. *See Akbar*, 91 A.3d at 235. The challenge to the weight of the evidence is waived for failure to raise it orally or in a written motion before sentencing or in a post-sentence motion. *See*

---

[18] The brief also avers, "The Appellant loved and cared for the Complainant and would never had done anything to hurt her." Appellant's Brief at 36-37. This argument is not applicable to the facts of this case.

[19] The only elements of a crime discussed in the brief are "sufficiency evidence to show that the defendant intentionally caused, or attempted to cause, serious bodily injury manifesting extreme indifference to the value of human life." Appellant's Brief at 32 (quoting *Commonwealth v. Caterino*, 678 A.2d 389, 391 (Pa. Super. 1996)). We note the discussion at this page of the *Caterino* decision is about the crime of aggravated assault.

Pa.R.Crim.P. 607(A)(1)-(3).

Appellant's next three claims pertain to the discretionary aspects of his sentence. First, he avers the trial court imposed an "excessive and disproportionate sentence and erred in applying the Sentencing Guidelines for convictions of summary offenses." Appellant's Brief at 26. In support, he argues the "court failed to articulate why it was making the sentence even harsher when **that factor** has already been addressed by the guidelines;" Appellant does not explain what "that factor" is. *Id.* at 28 (emphasis added). Appellant also avers the court failed to consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and community, and [his] rehabilitative needs." *Id.* at 29. Second, Appellant asserts the court erred in denying his motion for reconsideration of sentence. He states the motion properly included documentation from his doctors.

Third, Appellant avers the restitution of $72,800 was excessive and inappropriate. In support, he maintains: (1) the court failed "to consider the actual loss in this matter;" (2) "[t]he dogs seized from [his] home should not have been euthanized [or] taken from [him] in any manner;" and (3) he "is on disability as he suffers from various medical health problems and has no means of paying restitution." *Id.* at 30-31. *See Commonwealth v. Colon*, 708 A.2d 1279, 1281 (Pa. Super. 1998) (stating claims that sentencing court failed to consider evidence of defendant's ability to pay

restitution and sentence of restitution is excessive under circumstances implicate discretionary aspects of sentencing); *Commonwealth v. Walker*, 666 A.2d 301, 307 (Pa. Super. 1995) (noting claim that court lacked jurisdiction to impose restitution challenges legality of sentence, but claim that sentence of restitution is excessive under circumstances is challenge to discretionary aspects of sentencing).

Appellant's brief fails to include a Pa.R.A.P. 2119(f) statement, and the Commonwealth has objected. Commonwealth's Brief at 16, 17, 32, 36. Accordingly, these sentencing claims are waived. *See* Pa.R.A.P. 2119(f); *Commonwealth v. Karns*, 50 A.3d 158, 166 (Pa. Super. 2012) ("If a defendant fails to include an issue in his Rule 2119(f) statement, and the Commonwealth objects, then the issue is waived and this Court may not review the claim."), *appeal denied*, 65 A.3d 413 (Pa. 2013). Appellant's restitution claim is also waived for failure to raise it at sentencing or in a post-sentence motion. *See Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013) (stating challenge to discretionary aspect of sentence is reviewable only if defendant, *inter alia*, preserved issue by raising it at sentencing or in post-sentence motion), *appeal denied*, 86 A.3d 231 (Pa. 2014). Indeed, Appellant's counsel acquiesced to the amount at the sentencing hearing. N.T. Sentencing, 1/29/13, at 13 ("[T]hat would be certainly reasonable under the circumstances.").

In his final, ninth claim, Appellant avers the trial court erred in denying

his motion for bail pending appeal.[20] He claims he "suffers from a plethora of medical issues and is literally dying, wasting away in prison and being treated by physicians who do not have the benefit of knowing the complex history of his ailments or the specialization to treat his conditions." Appellant's Brief at 16. We agree with the trial court that no relief is due.

Appellant's brief wholly ignores the following. After filing the notice of appeal, he filed a motion for early parole, stating his minimum release date was July 27, 2013. The docket indicates the court granted this motion and ordered that he be paroled on that date. In its opinion, the trial court opined Appellant's bail-pending-appeal issue is moot because he "was paroled as of July 27, 2013 and is no longer incarcerated." Trial Ct. Op. at 11. Accordingly, we agree that on this issue, there is no relief this Court can grant.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2015

---

[20] Appellant's second post-sentence motion had requested bail pending appeal.

- 19 -