J-S55002-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| SEAN BRIDDELL, | |
| Appellant | No. 3369 EDA 2012 |

Appeal from the Judgment of Sentence November 16, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008010-2010

BEFORE:  BOWES, SHOGAN, and OTT, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED SEPTEMBER 12, 2014**

Sean Briddell appeals from the judgment of sentence of six to twelve years incarceration followed by eight years probation imposed by the trial court after a jury convicted Appellant of conspiracy to commit robbery. We affirm.

On September 4, 2012, Appellant proceeded to a jury trial on three counts of robbery and one count of criminal conspiracy to commit robbery. He was acquitted of the three robbery charges, but convicted of conspiracy to commit robbery.  That conviction is premised upon the following:

> On May 30, 2010 at approximately 2:00 a.m., the complainants, Joni Gamble, his brother Stephen Gamble, and Stephen's fiancée, Estrella Carrion, entered a Chinese store at 1334 Girard Avenue in Philadelphia to get some food.  Both Joni and Stephen testified at trial that they first noticed Appellant standing inside the store at the front, and observed Appellant look at them when Stephen pulled out his wallet to pay for the

food he had ordered. Joni and Stephen then observed Appellant exit and speak with two other males who were standing just outside the store. Appellant and the two other males then walked off together.

Appellant and the two other males returned approximately five minutes later. Appellant stayed just outside the door while the other two males entered the store. One of the males came up behind Stephen Gamble, pulled out a gun, tapped him with the gun, and said "You know what this is." (N.T, 9/5/12, pp. 68, 139). The second male, who was standing near the door, told the three victims to get on the floor, but the gunman said that was not necessary and to just give him their money. As Stephen fumbled with his wallet, the gunman reached in and grabbed the money out of the wallet. He then shook Stephen's hand and said "Thanks a lot." (N.T., 9/5/12, pp. 69, 141). Joni Gamble told the men he only had a dollar on him and handed it to the gunman. During the robbery, Joni testified that he observed Appellant look both ways like he was looking out. When the two men exited the store, Joni testified that he saw the gunman hand over the money he had taken from them to Appellant. Appellant and the two other men then ran off together.

Estrella Carrion called police immediately following the robbery. Joni Gamble flagged down Philadelphia Police Officer James Parker and got into the police vehicle. Moments later they spotted Appellant walking side by side with the other two males around 15th and Poplar Streets. Joni testified that he immediately identified them as the robbers and police ordered them to stop. Appellant was taken into custody while his companions fled east on Poplar. Other police officers apprehended one of the other men shortly thereafter. The gunman, Kevin Dowe, was finally arrested on June 29, 2010.

There was a stipulation by and between counsel that Officer Grou of Criminal Intelligence would testify that photos of Appellant and Kevin Dowe show matching tattoos consisting of a "B" on the right arm and a "G" on the left arm, consistent with tattoos for a group known as "BG". (N.T., 9/6/12, pp. 155-156). There was a further stipulation that Assistant District Attorney Jennifer Hoffman would testify that when she reviewed Appellant's Facebook page she observed several photos of Appellant's co-defendants posted thereon. She would further

- 2 -

testify that Appellant posted a message on his Facebook page on September 4, 2012, the first day of trial, that read "Been in court all day. Just picked my jury today and start trial tomorrow. It is what it is till it ain't. A snitch n___, that's that shit that I don't like. Y'all should kill yourself, rat ass n___s." (N.T., 9/6/12, pp. 156-158).

Trial Court Opinion, 1/7/14, at (unnumbered pages) 2-4 (superfluous citations to the record omitted).[1]

In this appeal from his judgment of sentence, Appellant raises these contentions:

1. Did not the lower court err by admitting into evidence a post made on the social media website Facebook regarding "snitching" where this post was not authenticated, was not relevant and any probative value was outweighed by the danger of unfair prejudice?

2. Did not the lower court err by denying appellant's motion for a mistrial after appellant inadvertently rode the same bus home as a deliberating juror, the juror realized that appellant lived in her neighborhood and the juror stated she was afraid to go out of her house?

Appellant's brief at 3.

The first issue we address is whether the trial court erred in admitting into evidence the postings of a Facebook page. In this respect, Appellant argues both that the page was not properly authenticated and that the posting was not relevant.

_____

[1] While Appellant stipulated to the contents of the Facebook page in question, he retained the right to raise objections to the admissibility of the evidence based upon grounds of relevancy and authenticity. N.T. Trial, 9/6/13, at 157.

As we outlined in **Commonwealth v. Akbar**, 91 A.3d 227, 235 (Pa.Super. 2014), "the standard of review of a trial court's admission or exclusion of evidence is well established and very narrow." The decision to admit evidence at trial

> is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

*Id*. (quoting **Commonwealth v. Montalvo**, 986 A.2d 84, 94 (Pa. 2009)).

Evidence must be authenticated prior to its admission into evidence, and Pa.R.E. 901 sets forth the principles applicable to authentication and identification of evidence. **See Commonwealth v. Serrano**, 61 A.3d 279 (Pa.Super. 2013). The general principle of authentication is succinctly stated as follows, "When a party offers evidence contending either expressly or impliedly that the evidence is connected with a person, place, thing, or event, the party must provide evidence sufficient to support a finding of the contended connection." The rule provides: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). A piece of evidence can be authenticated through distinctive characteristics, which includes the "appearance, contents, substance, internal patterns, or other distinctive

characteristics of the item, taken together with all the circumstances." Pa.R.E. 901(a)(4). Thus, a piece of evidence may be authenticated by circumstantial proof. *Commonwealth v. Collins*, 57 A.2d 237 (Pa. 2008).

For example, in *Collins*, the defendant maintained that counsel was ineffective for not contesting the authenticity of two letters admitted into evidence. The letters were represented to be from the defendant to a witness asking that witness not to testify against him. Even though the witness denied receipt of the letters, our Supreme Court concluded that they were properly authenticated, based solely upon these facts. The letters were mailed from the prison where the defendant was housed, contained his prison identification number, identified the defendant's trial counsel, and asked the witness to engage in conduct that inured to the benefit of the defendant. Even though the identifying features in question could have been created by another person, the Court concluded that these circumstances were sufficient, "when considered in their totality, to authenticate the letters." *Id*. at 266; *see also In re F.P.*, 878 A.2d 91 (Pa.Super. 2005) (contents of instant messages properly authenticated as originating from the defendant where they referred to events that were described at trial and defendant's first name was used in one of them).

In this case, the trial court did not abuse its discretion in concluding that the Commonwealth established the necessary link between Appellant and the Facebook page. While Appellant relies upon the absence of certain

proof, the following was used by the trial court in support of its decision. The page was created using Appellant's name, and it was the only one on the Facebook website with his name. The page had pictures of Appellant with his co-defendants. There was a posting on the start date of Appellant's trial that referred to the beginning of trial and jury selection, and it was that post that referred to snitching. These were nearly the same circumstances at issue in **Collins** and **In re F.P.** that were held sufficient to satisfy the authentication requirements.

We now examine Appellant's relevancy position. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." **Commowealth v. Antidormi**, 84 A.3d 736, 750 (Pa.Super. 2014) (citation omitted). In this case, the Facebook post was relevant since it demonstrated consciousness of guilt. It indicated that Appellant was angry because a witness had testified against him. Appellant called that witness an offensive term and labeled him a snitch. A snitch is an informant. By indicating that the witness was a snitch, Appellant also implied that his testimony was truthful. Thus, the posting was relevant. **Commonwealth v. King**, 959 A.2d 405 (Pa.Super. 2008) (fact that defendant wore a shirt that admittedly suggested that people should not snitch and should be killed if they did was relevant in defendant's trial for murdering a Commonwealth witness).

Appellant additionally asserts that any potential relevance of the post was outweighed by its prejudicial value. "Otherwise relevant evidence may be excluded if its probative value is outweighed by its potential for prejudice." *Antidormi*, *supra* at 750. In order for that to occur, the probative value of such proof must be "outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, pointlessness of presentation, or unnecessary presentation of cumulative evidence." *Id*. (citation omitted). The term "unfair prejudice" refers to "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Id*. (citation omitted). The posting at issue herein imputed guilty knowledge, which is not an improper basis upon which to base a verdict, to Appellant. It did not confuse or mislead the jury, was not cumulative, and did not delay the trial. Hence, we reject Appellant's position that its prejudicial impact outweighed its probative value.

The second issue on appeal concerns an unintended encounter between Appellant and one of the jurors. The juror viewed Appellant on her bus while she was riding home and realized that he lived in her neighborhood. The juror verbalized that her "concern was we live in the same neighborhood." N.T. Trial, 9/7/12, at 5. She was single and stayed in her house after viewing Appellant on the bus. She stated that she "felt kind of scared" since she feared some type of retaliation for her role as a juror. *Id*. The juror also indicated that she had never encountered Appellant in her

neighborhood prior to the event in question, and she represented the chance meeting would not affect her in connection with her responsibilities as a juror. *Id*. at 6.

Appellant claims that the trial court improperly denied his request for a mistrial based upon this incident. We evaluate the denial of a mistrial pursuant to a limited standard. "[A] trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." ***Commonwealth v. Bryant***, 67 A.3d 716, 728 (Pa. 2013) (citation omitted).

We do not view the events in question as depriving Appellant of a fair trial. While Appellant focuses upon the juror's fear of retaliation as creating such prejudice, we cannot agree with this proposition. If the juror indicated that she was afraid of retribution from Appellant for acting as a juror, it would make her more likely to acquit rather than convict him. In that way, she would avoid rather than invite retaliation. There was nothing in the chance meeting that indicated that the juror was in any way negatively inclined toward Appellant, or that the encounter would make her more likely to convict him. Hence, we reject this contention.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/12/2014</u>