J-S61022-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LORRI JO RILEY | |
| Appellant | No. 354 WDA 2014 |

Appeal from the Judgment of Sentence of February 6, 2014
In the Court of Common Pleas of Clarion County
Criminal Division at No.: CP-16-CR-0000521-2010

BEFORE:  FORD ELLIOTT, P.J.E., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                 **FILED NOVEMBER 12, 2014**

Lorri Jo Riley appeals the February 6, 2014 judgment of sentence, which was imposed after the trial court revoked Riley's probation due to her repeated failure to comply with the conditions of her sentence.  Herein, Riley challenges the admission of certain evidence at her revocation hearing, and the sufficiency of the evidence presented at that hearing to support the revocation.  We affirm.

In the early morning hours of July 4, 2010, a McDonald's restaurant[1] employee called the Pennsylvania State Police to report that Riley appeared intoxicated while operating a green Jeep in the restaurant's drive-thru lane.

_____

[*]     Retired Senior Judge assigned to the Superior Court.

[1]     The restaurant was located in Clarion County, Pennsylvania.

The employee further reported that Riley had an open bottle of alcohol next to her in the front seat of the vehicle.

Trooper Lee Bunyak responded to the call. When he arrived at the restaurant, the employee directed Trooper Bunyak to the parking area, where he found Riley sitting in the Jeep. When Trooper Bunyak approached the vehicle, Riley was in the driver's seat. The key was in the ignition, and a half-full bottle of alcohol was sitting next to Riley. Upon initiating a discussion with Riley, Trooper Bunyak noticed a strong alcoholic odor emanating from Riley's breath. Riley's speech was slow and slurred, and her eyes were bloodshot and glassy. Riley alleged that she had not been drinking that evening. She also maintained that the bottle of alcohol belonged to someone else.

After being removed from the vehicle, Riley was unable to satisfactorily complete field sobriety tests as administered by Trooper Bunyak. Consequently, she was placed under arrest for suspected driving under the influence of alcohol ("DUI"). Riley then was taken to a nearby hospital. However, Riley twice refused to give blood.[2]

_____

[2] These facts derive from the July 15, 2010 affidavit of probable cause that was submitted in conjunction with the criminal complaint. The certified record does not contain a copy of Riley's guilty plea transcript, from which we might have obtained a more accurate statement of the facts. Nonetheless, any differences between the facts as asserted in the affidavit of probable cause and those to which Riley agreed at the guilty plea hearing are immaterial to our disposition of this case.

On February 16, 2011, Riley pleaded guilty to DUI-second offense, 75 Pa.C.S. § 3802(a)(1).  On March 23, 2011, Riley was sentenced to serve five years of intermediate punishment, with ninety days of that term to be served as incarceration and the remainder to be served as probation.  As a condition of the sentence, Riley was ordered to attend and complete any evaluations and treatment that are deemed to be necessary by the adult probation department.  Riley also was ordered to abstain from drinking alcohol and to complete fifty hours of community service.

On June 21, 2011, Riley was released from incarceration.  On January 31, 2012, Riley was detained and charged with a violation of the terms of her probation, because she was found intoxicated in her residence on January 30, 2012.  Riley admitted to probation officers that she had consumed alcohol on January 29 and 30, 2012.  On February 6, 2012, Riley waived her right to her ***Gagnon***[3] hearings, and admitted that she had violated her probation.  Riley consented to serving ten days in the Clarion County Jail, and to be placed back on probation upon her release subject to the original probationary conditions.

On November 26, 2012, Riley was notified that she again had been charged with violating her probation.  Like the first violation, Riley was charged with consuming alcohol in violation of her probationary conditions.

---

[3]  ***See Gagnon v. Scarpelli***, 411 U.S. 778 (1973).

She also was charged with illegally using prescription drugs. Indeed, on November 20, 2012, probation officers found Riley in such an intoxicated state that they were compelled to call an ambulance to take her to a hospital. There, a test of Riley's blood revealed a blood alcohol content of 0.13%, as well as the presence of opiates. Riley admitted that she had been consuming vodka on a daily basis.

On that same date, Riley waived her right to a *Gagnon I* hearing. On November 29, 2012, following a *Gagnon II* hearing at which Riley admitted to violating her probation, Riley's probation was revoked, and she was placed into a treatment court program, which included a period of house arrest. However, on October 24, 2013, probation officers learned that Riley was being evicted from a counseling program for failure to comply with the terms of the program. Once again, Riley was in violation of her sentence. On October 29, 2013, Riley waived her rights to *Gagnon* hearings, and consented to serving four days in the Clarion County Jail and, upon release, to recommence participating in the treatment court program.

On January 10, 2014, Riley again was notified that she was in violation of the terms of her sentence. Riley was charged with failing to abide by the verbal instructions of the probation department and with failing to refrain from behavior that threatens or presents a clear and present danger to herself or others. Specifically, probation officers alleged that Riley was being evicted from her home due to her extended failure to pay rent, which the officers had verbally instructed her was a violation of her probation and

house arrest. Riley also failed to adhere to her house arrest schedule, and occasionally would leave the approved residence without permission. Finally, Riley failed to obey her case manager's repeated instructions to complete the necessary paperwork to obtain the medical coverage required to treat her Crohn's disease. The probation officers alleged that the failure to secure the coverage presented the risk of her not receiving the medical treatment that she required, a clear and present danger to her well-being.

Riley waived her right to a *Gagnon I* hearing. On February 6, 2014, the trial court conducted a *Gagnon II* hearing. At that hearing, the Commonwealth presented the testimony of Curtis Drake, Riley's supervising probation officer. Officer Drake testified that Riley had not complied with the terms of the treatment court program, and, consequently, was voted out of the program by the members of the treatment court team. Officer Drake explained to the trial court that Riley had failed to obtain adequate medical coverage, and could not maintain stable housing either at the Arc Manor House or the Oxford House, which provides housing for individuals suffering from addiction. Officer Drake further testified that, despite having multiple opportunities to earn money (including a job at a local Perkins restaurant and emergency federal funding), Riley failed to secure the necessary funding to pay rent to continue living at these residences. Officer Drake noted that, if Riley was released from jail, she would be homeless.

At the conclusion of the hearing, the trial court concluded that Riley had violated the terms of her probation for failing to complete the terms of

the treatment court program and for failing to maintain a proper residence. The trial court resentenced Riley to a term of incarceration of six months, with the opportunity to be paroled upon the submission of a home plan acceptable to the probation department and the court. Riley also was ordered to complete mental health and drug and alcohol assessments and treatment. If paroled, the trial court imposed the conditions that Riley maintain appropriate housing and that she complete any recommendations for treatment. All other aspects of her previous sentences, including probationary terms, were ordered to remain in effect.

On February 26, 2014, Riley filed a notice of appeal. In response, the trial court directed Riley to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On March 11, 2014, Riley timely filed a concise statement. On April 11, 2014, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(b).

Riley presents the following two questions for our consideration:

I. Did the trial court err in admitting testimony that consisted only of hearsay, by a witness that did not have personal knowledge, and therefore, violated [Riley's] Confrontation Clause rights?

II. Did the trial court err in finding that [Riley] had violated her probation by sufficient evidence, where the only evidence that existed for the alleged violations was from inadmissible testimony of a probation officer consisting of hearsay and lacking in personal knowledge?

Brief for Riley at 4.

In her first issue, Riley argues that the trial court erred in admitting Officer Drake's testimony, which Riley contends was "based wholly on hearsay." Brief for Riley at 11. We find Riley's argument to be waived.

The following exchange occurred between defense counsel, the assistant district attorney ["ADA"], and the trial court during Officer Drake's testimony at Riley's *Gagnon II* hearing:

| | |
|---|---|
| [Officer Drake]: | Basically I was notified by Jen Huff, who is the Oxford House outreach representative, this was on December 29th – |
| [Defense Counsel]: | Objection. Hearsay, Your Honor. |
| The Court: | What's your response, [ADA]? |
| [ADA]: | This is for the purpose of dealing with [*sic*] probation violation. I think the supervising probation officer has to rely on commentary or the description of things that happened for level of care otherwise [*sic*]. I think the rules of hearsay in probation violations are different than the rules of hearsay traditionally in trial. |
| [Defense Counsel]: | Your Honor, I would respectfully argue that the admittance of evidence regardless [of] at trial or [during a] probation violation doesn't preclude the requirement [that] the evidence be competent, and here Officer Drake is testifying to something he does not have firsthand knowledge of. |
| [ADA]: | I can work around the hearsay, Your Honor. |
| The Court: | You are withdrawing the question? |

| [ADA]: | I will withdraw my question and ask a different one. |
| | |

         \*      \*      \*

| [ADA]: | Was there ever a time she did not live in the Oxford House? |
| [Officer Drake]: | She was asked to leave and refused to do so on December 29th. |
| [Defense Counsel]: | Objection. Foundation, Your Honor. |
| The Court: | All right. So it's still a hearsay objection? |
| [Defense Counsel]: | Yes. |
| The Court: | You say there's an exception for probation, the hearsay rule is relaxed? |
| [ADA]: | My understanding is the hearsay rule is relaxed in *Gagnon* 2. |
| The Court: | All right. Well, we'll take a recess and I will do some research. Court is in recess. |

         \*      \*      \*

| The Court: | I find that the Rules of Evidence do apply to his *Gagnon* 2 hearing. Now, [ADA], are you offering this testimony to prove the truth of the matter stated or are you offering it to show what Mr. Drake did in response to that? |
| [ADA]: | I was offering it – I guess, I was offering it for the proof. |
| The Court: | So the objection is sustained. |

Notes of Testimony ("N.T."), 2/6/2014, at 5-7.

Riley steadfastly argues that the trial court erred in admitting hearsay evidence. However, the trial court did not do so. Riley's objection was

sustained with regard to the attempted use of hearsay testimony during the *Gagnon II* hearing. In other words, Riley's successful objection prevented the hearsay that specifically was challenged by Riley from being introduced at the hearing. From that point on, Officer Drake testified to the facts as set forth above without any further objection from Riley. Riley now argues that the entirety of Officer Drake's testimony was based upon hearsay evidence, and not based upon firsthand knowledge. Brief for Riley at 11, 14. But, again, Riley did not object to the remainder of Officer Drake's testimony. Riley only objected to the proffered hearsay set forth above.

It is both a bedrock and axiomatic principle in appellate jurisprudence that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Indeed, we reiterated this foundational tenet most recently in *Commonwealth v. Akbar*, 91 A.3d 227 (Pa. Super. 2014):

> Preliminarily, we observe that to preserve a claim of error for appellate review, a party must make a specific objection to the alleged error before the trial court in a timely fashion and at the appropriate stage of the proceedings; failure to raise such objection results in waiver of the underlying issue on appeal. *Commonwealth v. Charleston*, 16 A.3d 505 (Pa. Super. 2011); *Commonwealth v. Shamsud–Din*, 995 A.2d 1224 (Pa. Super. 2010). *See also Commonwealth v. Arroyo*, 723 A.2d 162, 170 (Pa. 1999) (explaining if ground upon which objection is based is specifically stated, all other reasons for its exclusion are waived).

*Akbar*, 91 A.3d at 235. Because Riley's objection in the trial court was limited to the testimony proffered at the time of the objection, and because

Riley did not object to the remainder of Officer Drake's testimony, her present challenge that the entirety of Officer Drake's testimony was inadmissible is waived for purposes of this appeal.[4]

In her second issue, Riley argues that the evidence presented by the Commonwealth at the probation hearing was insufficient to demonstrate by a preponderance of the evidence that Riley had violated her probation. In considering such a claim, we are guided by the following, well-established principles:

> The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment-a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

> **Commonwealth v. Sierra**, 752 A.2d 910, 913 (Pa. Super. 2000) (quotation marks and citations omitted).

> The Sentencing Code prescribes, with respect to the imposition of conditions of probation, that "[t]he court shall attach such of the reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life." 42 Pa.C.S. § 9754(b). In **Commonwealth v. Vilsaint**, 893 A.2d 753 (Pa. Super. 2006), a panel of this Court, citing 42 Pa.C.S. § 9754(b), held that "the legislature has specifically empowered the court, not the

_____

[4] Riley also argues that her objection was the functional equivalent of a "continuous objection." Brief for Riley at 11. However, she did not request a continuing objection, nor did she indicate in any other manner that she intended her objection to cover the entirety of Officer Drake's testimony. Thus, this specific argument is unavailing.

probation offices and not any individual probation officers, to impose the terms of probation." **Id.** at 757. Furthermore, in **Commonwealth v. MacGregor**, 912 A.2d 315 (Pa. Super. 2006), this Court noted that a sentencing court cannot revoke probation based upon a probationer's violation of a condition imposed solely by a probation office.

When assessing whether to revoke probation, the trial court must balance "the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison." **Commonwealth v. Ballard**, 814 A.2d 1242, 1245 (Pa. Super. 2003). In order to uphold a revocation of probation, the Commonwealth must show by a preponderance of the evidence that a defendant violated his probation. **Commonwealth v. Shimonvich**, 858 A.2d 132, 134 (Pa. Super. 2004).

**Commonwealth v. Allshouse**, 33 A.3d 31, 37 (Pa. Super. 2011).

Although, as noted, a trial court may only find a violation of conditions that the court itself imposed upon a probationer, **see Vilsaint**, **MacGregor**, *supra*, "[t]he courts have recognized 'implied conditions' of probation, such as 'do not commit another crime.' Such implied conditions are obvious in nature." **Vilsaint**, 893 A.2d at 757 n. 5; **Allshouse**, 33 A.3d at 37. When Riley was resentenced on December 6, 2012, after multiple prior violations, the trial court instructed her by written order that she was placed into the treatment court program, and that she was required to complete all levels of care associated with that program. Moreover, Riley was required to complete six months of house arrest, and to comply with all of the conditions of her prior sentences that were not modified by the order. Order of Court, 12/6/2012, at ¶¶1-4. On January 10, 2014, Riley was notified by the probation department that she had violated her probation by failing to abide

- 11 -

by the directions of the probation department by failing to secure and maintain reasonable housing and by failing to comply with the conditions of her house arrest. Additionally, she had failed to apply for, and obtain, the necessary medical coverage to treat her serious illness. Although the notice is drafted in terms of violating conditions set forth by the probation department, it is quite clear to this Court that having reasonable housing and securing medical treatment for her illness are implied conditions of the trial court's command that she complete the requirements of the treatment court program and house arrest. It is obvious to us that maintaining stable housing is not only implied, but also essential to complying with the court's house arrest order.

Turning to the sufficiency of the evidence presented, we agree with the trial court that the testimony of Officer Drake was sufficient to prove by a preponderance of the evidence that Riley had violated her probation. On the record, the trial court explained the basis for its ruling as follows:

> The evidence [demonstrates that Riley] didn't maintain a household which would accommodate the house arrest with electronic monitoring, and no longer has a residence, which is essential to her. First of all, the house arrest electronic monitoring is a condition of successful completion of the treatment court program. And the failure to maintain a residence and also the failure to obtain appropriate medical coverage and care adversely affects her ability to successfully complete the treatment court program in terms of her recovery. If she has significant medical problems, if she has no home, no place to live she can't meet the goals of the program so I do find the violation for those reasons.

N.T. at 16-17.

Having reviewed the record, we discern no abuse of discretion by the trial court in rendering the above conclusion. The evidence supported the trial court's ruling that Riley had violated her probation by a preponderance of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/12/2014