J. A14005/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ERIC A. CHAMBERS, | : | No. 1961 MDA 2013 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, July 17, 2013,
in the Court of Common Pleas of Dauphin County
Criminal Division at No. CP-22-CR-0000392-2012

BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:    **FILED NOVEMBER 25, 2014**

Eric A. Chambers appeals from the judgment of sentence entered July 17, 2013, in the Court of Common Pleas of Dauphin County.

The facts of this matter are as follows.  On September 9, 2011, Jalil Walters ("Jalil") and his two brothers, Ibrahiim Muhammad ("Ibrahiim") and Lewin Chism, Jr. ("Lewin"), were drinking at their grandmother's house with family members and their friend, Mike Burgress ("Mike").  (Notes of testimony, 5/13-16/2013 at 76-78.)  Lewin was admittedly intoxicated, having consumed three beers and several shots of liquor.  (***Id.*** at 80.)  Jalil had also consumed several shots and a beer.  The group decided to continue drinking at the Jazzland Bar, located on Walnut Street in Harrisburg.  (***Id.*** at 79-81.)

---

* Retired Senior Judge assigned to the Superior Court.

Upon arrival, at approximately 11:00 p.m., Lewin began to feel anxious and uncomfortable; he told his brothers that he wanted to leave as he thought other people in the bar were thugs and gangsters. (*Id.* at 135, 224-226.) Lewin left the bar, which prompted Jalil, Ibrahiim, and Mike to follow in an effort to calm him down. (*Id.* at 86, 209.)

Appellant and Demond Bates, who was security at the bar, followed them outside. Appellant approached Lewin and asked him what he had been saying about the clientele in the bar. (*Id.* at 86, 136, 227-228.) Appellant then took a gun out of his pants and pointed it in Lewin's face. (*Id.* at 87-89.) The brothers asked Bates to interject, which he refused to do. Appellant then secreted the gun on his person and went back inside the bar. (*Id.* at 90.)

A short time later, appellant exited the bar again, and this time he was "even more aggressive." (*Id.* at 232.) Appellant stated he was going to kill one of them. (*Id.*) Appellant, who was "irate and angry," pointed the gun at Ibrahiim's chest. (*Id.* at 91-92, 229-232.) The brothers claimed appellant pulled the trigger and at that split second, Jalil jumped in front of the gun taking the bullet that was fired.[1] (*Id.* at 231, 233.) All of the brothers identified appellant as the shooter in a photographic lineup and in the courtroom. (*Id.* at 97, 148-149, 237-239.) All of the brothers also

_____

[1] At the preliminary hearing, Jalil also testified that he jumped in front of his brother and took the bullet that was intended for him. (Notes of testimony, 1/1/12 at 9.)

stated that the gun used was a revolver. (*Id.* at 98-100, 146-148, 229-230.)

After Jalil was shot, the group flagged down a police vehicle, which then called for an ambulance. (*Id.* at 95-96.) Jalil was hospitalized for six to eight days and underwent two surgeries. (*Id.* at 243.) The bullet had traveled through his left elbow, which it shattered, and his abdomen. The bullet is to remain in his abdomen indefinitely, as the doctors were afraid his internal organs might rupture if they removed it. (*Id.* at 240-244.)

Mike, however, claimed that the shooting occurred right after the group exited the bar, and that the bouncer was most likely the shooter. (*Id.* at 211-212.) Mike was standing approximately five feet from the shooter who he described as heavy set with hair on his head and a beard, not a goatee. (*Id.* at 210, 216.) Mike testified he was "unsure" if any of the individuals present at trial was the shooter, including appellant, who was bald with a goatee; he averred he did not see the shooter in the courtroom. (*Id.* at 216, 217-220.) Lewin, Ibrahiim, Jalil, and Mike were also unable to give consistent descriptions of the shooter or what he was wearing. Demond Bates, who worked as a bouncer on the night in question, was familiar with appellant but did not see him in the area at any point.

Detective Quinten Kennedy of the Harrisburg Police Department testified that on January 9, 2012, he was informed that appellant had been arrested at a motel. (*Id.* at 281-282.) He was instructed to go to the motel

and execute a search pursuant to a warrant that had been issued. (*Id.* at 282-283.) They searched the room and also discovered appellant's vehicle parked outside a motel room. (*Id.* at 286-287.) Officer Kennedy had the vehicle towed to the impound lot and then searched the vehicle, finding several pieces of paper in the driver's side door panel. One of these items was an envelope containing appellant's handwritten notes. (*Id.* at 291-293, 310.)

During trial, Detective Ryan Neal testified to the search warrant and subsequent search of the vehicle. He was asked to read the contents of the notes to the jury on direct examination: "On one side [of the envelope appears] the abbreviation for criminal attempt homicide, and then former convict not to possess firearms." (*Id.* at 291.) Defense counsel objected and moved for a mistrial because the statement suggested that appellant had previously been guilty of another crime; prior to trial, the count of persons not to possess firearms had been bifurcated. The court denied his motion and his request for a curative instruction, as it found the error harmless. (*Id.* at 300-301.)

After a jury trial, appellant was convicted of criminal attempt (homicide), aggravated assault, firearms not to be carried without a license, simple assault, recklessly endangering another person, and possession of a firearm prohibited. On July 17, 2013, appellant received an aggregate

sentence of 25 to 50 years' incarceration and a fine of $4,000. Appellant was also ordered to pay restitution.

A timely post-sentence motion was filed, and defense counsel filed a motion to withdraw, which was granted on July 22, 2013. Appellant's new counsel, Andrea Haynes, Esq., filed a supplemental post-sentence motion on July 31, 2013. On September 3, 2013, appellant filed an amended post-sentence motion. A hearing was held on September 27, 2013, and thereafter, the court denied the motion on October 3, 2013. Appellant filed a timely notice of appeal on Monday, November 4, 2013.[2] The Honorable Andrew H. Dowling issued a Rule 1925(a) opinion on December 11, 2013, whereby it incorporated its memorandum and order from October 3, 2013.

The following issues have been presented for our review:

> I. Whether the trial court committed reversible error in instructing the jury that the victim of the attempted murder was Ibrahiim Muhammad, not Jalil Walters, where a variance existed that was fatal to the verdict between the criminal information and the jury instructions in violation of Appellant's Due Process protections of the Fourteenth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution?
>
> II. Whether the trial court committed reversible error in denying Appellant's motion for a mistrial where a prosecution witness read from a document, in front of the jury, that Appellant is a convict who cannot own or possess a

---

[2] Because November 2, 2013, fell on a Saturday, appellant had until the following Monday to file his appeal. 1 Pa.C.S.A. § 1908.

firearm, where Appellant's charge for Persons Not to Possess a Firearm had been bifurcated from Appellant's other charges prior to trial to eliminate prejudice to Appellant?

III. Whether the Commonwealth failed to adduce sufficient evidence at trial to sustain the jury's verdict of guilty on all counts where the Commonwealth failed to prove beyond a reasonable doubt that Appellant committed the crimes alleged?

IV. Whether the jury's verdict of guilty on all counts was contrary to the weight of the evidence so as to shock one's sense of justice where there was conflicting testimony as to when the shooting occurred, the description of the shooter, and whether Appellant was present on the night in question?

V. Whether Appellant's sentence is excessive and unreasonable and constitutes too severe a punishment in light of Appellant's rehabilitative needs and where the punitive measures inherent in this sentencing scheme could have been accomplished with the imposition of a lesser sentence?

Appellant's brief at 9-10.

In the first issue presented, appellant claims the trial court committed reversible error where a variance existed between the criminal information and the jury instructions. Specifically, he directs our attention to a jury instruction that identified Ibrahiim as the victim rather than Jalil, which went against the criminal information sheet. Appellant avers that the criminal information led him to believe the Commonwealth intended to prove at trial that appellant attempted to kill Jalil. (**Id.** at 24.) Appellant also argues that

the trial court, in effect, amended the criminal information when it gave a special interrogatory where the jury was asked to determine whether Jalil had suffered serious bodily injury during the commission of the attempted murder of Ibrahiim. (*Id.* at 25.)

The purpose of the information is to provide the accused with sufficient notice to prepare a defense. *Commonwealth v. Alston*, 651 A.2d 1092, 1095 (Pa. 1994). "An information is sufficient if it sets forth the elements of the offense intended to be charged with sufficient detail that the defendant is apprised of what he must be prepared to meet, and may plead double jeopardy in a future prosecution based on the same set of events." *Id.* Additionally, the information must be read in a common sense manner, and should not be construed in an overly technical sense. *Commonwealth v. Jones*, 912 A.2d 268, 289 (Pa. 2006). A purported variance between a criminal information and evidence produced at trial is not fatal, "unless it could mislead the defendant at trial, involves an element of surprise prejudicial to the defendant's efforts to prepare his defense, precludes the defendant from anticipating the prosecution's proof, or impairs a substantial right." *Id.*

We find no error with either the trial court's decision or rationale. After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, it is our determination that there is no merit to this question raised on appeal. The

trial court's opinion, filed on December 11, 2013, comprehensively discusses and properly disposes of the question presented. We will adopt it as our own and affirm on that basis. (Trial court opinion, 12/11/13 at 2-3.)

We note our agreement with the trial court and the Commonwealth that appellant's argument regarding the variance is factually incorrect. The information did not identify a victim or intended victim with regard to attempted murder.[3] (Docket #11-2.) The criminal information only states that Jalil suffered gunshot wounds to his upper body as a result of the commission of the crime. (*Id.*) Thus, appellant's argument that the Commonwealth put him on notice that it "intended to prove at trial that the defendant attempted to kill Jalil Walters" is erroneous. (Appellant's brief at 26.) During its instruction to the jury, Ibrahiim was only named as an intended victim, not the victim; the trial court specifically instructed "that the defendant did a certain act; that is fired a handgun at Ibrahiim Muhammad." (Notes of testimony, 5/13-16/2013 at 368.)

Included in the argument section of the first issue, appellant also includes a claim concerning the special interrogatory; we find this argument is waived as it was not included in his Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b)(4)(vii); **Commonwealth v. Mattison**, 82 A.3d 386, 393 (Pa. 2013) (defendant waived his challenges to the sufficiency of the evidence to support his burglary and robbery convictions where he failed to

---

[3] The information did name a victim for the crime of aggravated assault.

include these challenges in his statement of matters complained of on appeal).

The second issue concerns whether the trial court erred in denying his motion for a mistrial. Our standard of review of a court's denial of a motion for mistrial is as follows:

> A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

*Commonwealth v. Akbar*, 91 A.3d 227, 236 (Pa.Super. 2014), quoting *Commonwealth v. Tejeda*, 834 A.2d 619, 623 (Pa.Super. 2003) (internal citations and footnote omitted).

Appellant claims he suffered prejudice when the jury heard "evidence that [a]ppellant was a former convict." (Appellant's brief at 33.) We disagree with appellant's characterization of the testimony. Here, the Commonwealth did not elicit testimony of appellant's status as a former convict; in fact, the trial court properly bifurcated proceedings related to appellant's charge of persons not to possess a firearm during the trial. Rather, during direct examination of Officer Neal, he read what was written on an envelope found during the search of appellant's car: "on the one side it has the abbreviation for criminal attempt homicide, and then former

convict not to possess firearm." (Notes of testimony, 5/13-16/2013 at 290-291.)

We cannot find this brief remark entitles appellant to a new trial. This court has held that a witness' isolated, passing reference, which did not give details of a prior offense and which the Commonwealth did not elaborate upon or otherwise exploit, warrantied no relief. ***Commonwealth v. Miller***, 481 A.2d 1221, 1222 (Pa.Super. 1984). When considering the officer's testimony as a whole, the reference to a "former convict" did not stand out on its own; in fact, the remaining testimony of the officer concerning the words written on the envelope was far more damaging. When the officer continued to testify after the sidebar, he described the remaining contents of the envelope as follows:

> [A]lso in the handwriting it has the name of Jalil Walters. In parenthesis it has left arm and abdomen. Also the name of Ibrahiim Muhammad and Lewin Chism. Then below that a little bit there's Walters and Muhammad identified me from photo array. And then below that it says Jalil push Ibrahiim out of the way -- d-a way and got hit. And then it lists my name and my officer telephone number. And I think at the bottom it says Carter, and then it has a -- I think it's a colon or semicolon, and it says I got ten eyewitnesses.

Notes of testimony, 5/13-16/13 at 310.

Therefore, we find appellant suffered no prejudice from the officer's fleeting mention of the crime. Additionally, the trial court offered to issue a curative instruction and defense counsel rejected the offer.

The third claim concerns the sufficiency of the evidence. However, appellant's entire argument concerns credibility as he avers the Commonwealth's witnesses gave conflicting descriptions of the shooter and he avers he was not present at the Jazzland Bar on the evening in question. (**See** appellant's brief at 40-41.) Appellant also contends that the jury should have credited the testimony of Mike and the bouncer whose description did not match his appearance. An argument that the finder of fact should have credited one witness' testimony over that of another witness goes to the weight of the evidence, not the sufficiency of the evidence. **Commonwealth v. W.H.M., Jr.**, 932 A.2d 155, 160 (Pa.Super. 2007) (claim that the jury should have believed appellant's version of the event rather than that of the victim goes to the weight, not the sufficiency of the evidence); **Commonwealth v. Wilson**, 825 A.2d 710, 713-714 (Pa.Super. 2003) (a review of the sufficiency of the evidence does not include an assessment of the credibility of testimony; such a claim goes to the weight of the evidence); **Commonwealth v. Gaskins**, 692 A.2d 224, 227 (Pa.Super. 1997) (credibility determinations are made by the finder of fact, and challenges to those determinations go to the weight, not the sufficiency of the evidence). Thus, we will not review appellant's asserted sufficiency of the evidence claim as it is, in fact, a weight of the evidence claim.

Nevertheless, appellant properly preserved and presented a claim regarding the weight of the evidence.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis in the original omitted) (citations omitted).

There was no abuse of discretion by the trial court. Appellant essentially asks us to reassess the credibility of the witnesses. Issues of credibility are for the trier of fact to decide, and the jury obviously chose to believe the Commonwealth's version of the facts and believed the recollection of the three brothers, regardless of the fact that they had consumed alcohol. As the trial court observed, while appellant "emphasizes that Mike Burgress testified that, unlike [appellant], the shooter had hair on his head and a beard, Mr. Burgress originally testified that he was not able to see who shot Jalil even though he testified he was standing five feet away at the time." (Trial court opinion, 12/11/13 at 9.) We conclude appellant is entitled to no relief.

The final claim presents a challenge to the discretionary aspects of sentencing. "It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." *Commonwealth v. Austin*, 66 A.3d 798, 807-808 (Pa.Super. 2013) (citation omitted).

> [T]he right to appeal such an aspect of sentencing is not absolute and is waived if the appellant does not challenge it in post-sentence motions or by raising the claim during sentencing proceedings. To reach the merits of a discretionary sentencing issue, this Court will conduct a four-part analysis to determine:
>
> > (1) whether Appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether Appellant's brief has a fatal defect; and (4) whether there is a substantial question that the

> sentence appealed from is not appropriate under the sentencing code.

***Commonwealth v. Bullock***, 948 A.2d 818, 825-826 (Pa.Super. 2008), ***appeal denied***, 968 A.2d 1280 (Pa. 2009) (citation omitted).

Here, appellant filed a timely notice of appeal, and preserved his claim that the restitution portion of his sentence is excessive. He has also included in his appellate brief a separate Rule 2119(f) statement. Therefore, we proceed to determine whether appellant has presented a substantial question that his sentence is not appropriate under the Sentencing Code.

Appellant argues that his combined fine and restitution amount of $13,635.26 is excessive and unreasonable. (Appellant's brief at 21.) He avers that the fine goes beyond what is necessary to protect the public and the money will not impact the victim or the community. He also states he will never be able to afford to pay the fine and claims that the fine "does not consider his rehabilitative needs." (***Id.***) This issue implicates the discretionary aspects of appellant's sentence and raises a substantial question. ***Commonwealth v. Walker***, 666 A.2d 301, 307, 310 (Pa.Super. 1995), ***appeal denied***, 680 A.2d 1161 (Pa. 1996) (challenges alleging that a sentence of restitution is excessive under the circumstances are challenges to the discretionary aspects of sentencing).

Our standard of review in an appeal from the discretionary aspects of a sentence is well settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Hardy*, 939 A.2d 974, 980 (Pa.Super. 2007) (citation omitted).

Appellant contends that the combined fine and restitution amount of $13,635.26 ($9,635 in restitution and $4,000.26 in fines) is excessive, given his financial situation. At the outset, we note that restitution is penal in nature and may be imposed without regard to the defendant's ability to pay when incorporated as part of a defendant's direct sentence. *Commonwealth v. Karth*, 994 A.2d 606, 607 (Pa.Super. 2010). The sentencing court is not required to consider evidence of a defendant's ability to pay when imposing restitution; such ability need only be considered upon default. *Commonwealth v. Colon*, 708 A.2d 1279, 1283 (Pa.Super. 1998).

However, the applicable provision of the Sentencing Code provides, in pertinent part,

> **(b)** **Fine as additional sentence.--**The court may sentence the defendant to pay a fine in addition to another sentence, either involving total or partial confinement or probation, . . . .
>
> . . . .

> **(c)** **Exception.--**The court shall not sentence a defendant to pay a fine unless it appears of record that:
>
> > (1) the defendant is or will be able to pay the fine;
> >
> > (2) the fine will not prevent the defendant from making restitution or reparation to the victim of the crime.
>
> **(d)** **FINANCIAL RESOURCES.--**In determining the amount and method of payment of a fine, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose.

42 Pa.C.S.A. § 9726(b), (c) (d). "Imposition of a fine is not precluded merely because the defendant cannot pay the fine immediately or because he cannot do so without difficulty." ***Commonwealth v. Thomas***, 879 A.2d 246, 264 (Pa.Super. 2005), ***appeal denied***, 989 A.2d 917 (Pa. 2010).

We have read the sentencing transcript, which reveals that the trial judge considered both appellant's character and the particular circumstances of the offenses. However, the record is silent as to the court's inquiry into appellant's ability to pay the fines imposed as required by Section 9726(c) and (d). While the trial court had a pre-sentence investigation report which may contain evidence to support the trial court's imposition of a fine, the report was not made part of the certified record. Nor does the trial court's opinion provide insight into its investigation of his ability to pay. Because of

the inadequate record, we vacate the fine imposed against appellant and remand for resentencing.

Affirmed in part; vacated in part. Matter remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/2014

DEC 11 2013

COMMONWEALTH OF PENNSYLVANIA   :   IN THE COURT OF COMMON PLEAS
  :   DAUPHIN COUNTY, PENNSYLVANIA
           v.   :
  :   NO. 392 CR 2012
  :
ERIC CHAMBERS   :

## MEMORANDUM OPINION
[Pursuant to Pa.R.A.P. 1925(a)]

This appeal follows our dismissal of appellant Eric Chamber's ("appellant's") post-sentence motions via Memorandum and Order dated October 3, 2013.

Appellant's Concise Statement of Errors mirrors the issues raised in his post-sentence motions. Thus, we set forth a complete analysis of appellant's claims and found that they lacked merit in our Memorandum and Order dated October 3, 2013, which we attach hereto and incorporate herein. For all of those reasons, the dismissal of appellant's request for post-sentence relief should be affirmed.

BY THE COURT:

JUDGE ANDREW H. DOWLING

DISTRIBUTION:
Dauphin County District Attorney's Office
Ryan Lysaght, Esquire, Dauphin County Public Defender
Clerk of Courts
Court Administration

COMMONWEALTH OF PENNSYLVANIA  :  IN THE COURT OF COMMON PLEAS
                                      :  DAUPHIN COUNTY, PENNSYLVANIA
                                      :

             v.                     :  NO. 392 CR 2012
                                        :

ERIC A. CHAMBERS             :  CRIMINAL ACTION

## MEMORANDUM AND ORDER

This opinion follows briefing and oral argument on defendant Eric Chambers' ("defendant's") post-sentence motions, which for the following reasons is DENIED. This case concerns a confrontation outside the Jazzland Bar on September 9, 2011 around 11:30 p.m. that escalated into a shooting. Particularly, defendant waved a gun at brothers Ibrahiim Muhammad ("Ibrahiim"), Jalil Walters ("Jalil") and Lewin Chism ("Lewin") apparently because of words he believed one of them uttered inside the bar. Defendant then pointed a gun at Ibrahiim and pulled the trigger. Jalil Walters intercepted the bullet to save his brother's life and was struck in the elbow and abdomen. On May 16, 2013, following a jury trial, defendant was convicted of criminal attempt homicide, aggravated assault, carrying a firearm without a license, simple assault, recklessly endangering another person, and persons not to possess firearms.

On July 17, 2013, defendant was sentenced to an aggregate of 25 to 50 years' incarceration. On July 19, 2013, defendant filed post-sentence motions. That same day, defense counsel filed a motion to withdraw, which was granted two days later on July 22, 2013. Defendant filed a supplemental post-sentence motion on July 26, 2013, and an amended post-sentence motion and accompanying brief on September 3, 2013. The Commonwealth filed a responsive brief on September 16, 2013. Oral argument was held on September 27, 2013. Defendant raises five issues, addressed below.

1

## THE CRIMINAL INFORMATION

Defendant argues that the trial court erred by instructing the jury that Ibrahiim Muhammad was the victim of the attempted murder even though the criminal information led defendant to believe that the Commonwealth intended to prove at trial that the defendant attempted to kill Jalil Walters. Defendant asserts that this jury instruction constituted a fatal variance to the criminal information and thus hindered him from preparing an adequate defense and prejudicially surprised him at trial. Additionally, defendant argues that the trial court in effect amended the criminal information by giving a special interrogatory asking the jury to determine whether Jalil Walters suffered serious bodily injury during the attempted murder.

That the court instructed the jury that Ibrahiim Muhammad was the victim is factually incorrect; the court identified Jalil Walters as the victim. (N.T. 365.24-366.2) Furthermore, the court instructed that, to find defendant guilty of criminal attempt murder, the jury would have to find that he fired a handgun at Ibrahiim Muhammad with the specific intent to kill him. (N.T. 367-368)

Defendant's contentions are further resolved by a plain reading of the criminal information. The criminal information does not specify the intended victim; it only specifies that Jalil Walters suffered serious bodily injury so as to satisfy *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Because the criminal information, which provided sufficient notice of the charges against the defendant, did not indicate who the intended victim was, the criminal information was not changed or amended by any instruction to the jury.

Moreover, this court does not view the lack of specificity in the criminal information as to who the intended victim was as a material or prejudicial variance. "It is well settled that a purported variance will not be deemed fatal unless it could mislead the defendant at trial,

2

involves an element of surprise prejudicial to the defendant's efforts to prepare his defense, precludes the defendant from anticipating the prosecution's proof, or impairs a substantial right." *Com. v. Pope*, 317 A.2d 887, 890-891 (Pa. 1974). Here, defendant was adequately notified of his charges. At the preliminary hearing in January 2012, Jalil testified that Ibrahiim was the target of the shooting but that he (Jalil) jumped in front of the bullet for his brother, whom he was standing beside. During discovery and at trial, witness statements corroborated this testimony. As such, defendant was aware of the Commonwealth's theory of the case well before trial, even if it was not explicitly outlined in the criminal information. Furthermore, defendant's defense at trial was that he was not present when the shooting occurred. Thus, it is unlikely that naming a victim in the criminal information would have altered his defense in any way.

## FORMER CONVICT REFERENCE

Defendant contends that the trial court should have granted his motion for a mistrial because of a reference to defendant's prior criminal activity.

The alleged reference happened during the direct examination of Detective Ryan Neal while testifying about the search of defendant's car some months later when the defendant was arrested. One of the documents found inside the driver's side door was an envelope with handwritten notes on it. Officer Neal testified that "on the one side [of the envelope] it has the abbreviation for criminal attempt homicide, and then former convict not to possess firearm." (N.T. at 290-291) Defense counsel then asked to approach and moved for a mistrial based on the testimony.

Our Superior Court has reviewed the applicable law as follows:

> Clear references to prior unrelated criminal conduct by a defendant generally warrant the granting of a defense motion for mistrial, because the commission of one crime is not proof of the commission of another and because the effect of such evidence is to create unfair prejudice against the defendant. However, not all references which may indicate

3

prior criminal activity warrant reversal. Mere "passing references" to prior criminal activity will not necessarily require reversal unless the record illustrates definitively that prejudice resulted from the reference. The nature of the reference and whether the remark was intentionally elicited by the Commonwealth are additional factors to be considered in determining whether a mistrial is necessary. Moreover, an immediate curative instruction to the jury may alleviate the harm which would otherwise result from reference to prior criminal conduct.

*Com. v. Sattazahn,* 631 A.2d 597, 608 (Pa.Super. 1993) (internal citations and quotations omitted).

As a threshold matter, the reference to a handwritten note of a "former convict not to possess firearm" is not a clear reference to defendant's prior unrelated criminal conduct. There was no testimony concerning whether the handwritten words "former convict" was a reference to the defendant. More generally, there was no testimony concerning who wrote the note, why it was written, or where the information on the note was obtained from. All that was established was that someone wrote those words on an envelope, and that envelope was found in defendant's car.

Not only was the testimony not a clear reference to defendant, but the reference was a passing one. At most, the testimony regarding the handwritten abbreviation by an unknown writer was a passing reference that was never linked to defendant. Furthermore, the remaining words on the envelope did not elaborate on the prior reference to a "former convict." Specifically, Officer Neal described the remaining contents of the envelope as follows:

> Sure, also in the handwriting it has the name of Jalil Walters. In parenthesis it has left arm and abdomen. Also the name of Ibrahiim Muhammad and Lewin Chism. Then below that a little bit there's Walters and Muhammad identified me from photo array. And then below that it says Jalil push Ibrahiim out of the way -- d-a way and got hit. And then it lists my name and my office telephone number. And then on the bottom it says Carter, and then it has a -- I think it's a colon or semicolon, and it says I got ten eyewitnesses.

4

(N.T. 310.2-12) Moreover, the trial court gave defense counsel an opportunity to present a curative instruction, which counsel declined. As such, the reference to an unidentified "former convict" did not constitute an improper reference to defendant's prior criminal activity.

## SUFFICIENCY OF THE EVIDENCE

Defendant argues that the Commonwealth failed to adduce sufficient evidence at trial to sustain the jury's verdict.

Since defendant also argues that the verdict was against the weight of the evidence, however, defendant has conceded that the evidence was sufficient. *See Com. v. Rossetti*, 863 A.2d 1185, 1191 (Pa.Super. 2004) ("A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict."). Even without defendant's admission, the evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, and all reasonable inferences derived therefrom, is sufficient to establish all elements of defendant's convictions beyond a reasonable doubt. *See Com. v. Blakeney*, 946 A.2d 645, 651 (Pa. 2008).

A person is guilty of criminal attempt homicide when the Commonwealth proves beyond a reasonable doubt that the defendant committed "any act which constitutes a substantial step toward the commission of that crime," 18 Pa.C.S.A. §901(a), and that the defendant had the specific intent to kill at the time the act was committed, 18 Pa.C.S.A. §2502(a). At trial, brothers Lewin, Ibrahiim and Jalil testified that defendant threatened them outside the Jazzland bar, pointed a gun at Ibrahim, pulled the trigger, and shot Jalil who jumped in front of the bullet for his brother Ibrahim. (N.T. at 92, 145, 228-233) The bullet entered Jalil's elbow, shattering it, and became lodged in his abdomen, where it remains to this day. All three witnesses were standing a couple of feet away from the shooter when the shot was fired, and were "100%"

5

certain that defendant was the shooter. (N.T. at 97.6, 149.6-7, 236-238) Thus, defendant's argument that the Commonwealth failed to prove that defendant was present on the night of the shooting fails.

As such, the testimony presented at trial showed that defendant had the specific intent to kill by threatening to kill Ibrahim and by using a deadly weapon upon a vital part of the victim's body. *See Com. v. Rivera*, 773 A.2d 131, 135 (Pa. 2001) ("The use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill."). The testimony also showed that defendant took a substantial step towards obtaining his objective by pointing a loaded gun at Ibrahiim while in close range and pulling the trigger. All of this evidence is sufficient from which a jury could conclude that defendant was guilty of criminal attempt homicide.

A person is guilty of aggravated assault when the Commonwealth proves beyond a reasonable doubt that the defendant "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1).

As discussed above, the testimony at trial established that defendant pointed a loaded gun at Ibrahiim at close range and fired. A jury can reasonably infer that this action evidences an intent to cause serious bodily injury, which materialized when Jalil intercepted the bullet for his brother. The bullet shattered Jalil's elbow and remains lodged in his abdomen because doctors are afraid that his internal organs will rupture if they attempt to remove it. He was hospitalized for about one week and underwent two surgeries. All of this evidence is sufficient from which a jury could conclude that defendant was guilty of aggravated assault.

A person is guilty of carrying a firearm without a license when the Commonwealth proves beyond a reasonable doubt that the defendant "carrie[d] a firearm concealed on or about

6

his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license." 18 Pa.C.S.A. §6106(a)(1). At trial, Lewin, Ibrahiim and Jalil testified that defendant pulled out a gun from the waistband of his pants, and then pointed the gun at Ibrahiim and shot Jalil. The parties also stipulated that on September 10, 2011, defendant was not licensed to carry a firearm in the Commonwealth of Pennsylvania. All of this evidence is sufficient from which a jury could conclude that defendant was guilty of carrying a firearm without a license.

A person is guilty of simple assault when the Commonwealth proves beyond a reasonable doubt that the defendant "attempt[ed] by physical menace to put another in fear of imminent serious bodily injury." 18 Pa.C.S.A. §2701(a)(3). "[T]he act of pointing a gun at another person [can] constitute simple assault as an attempt by physical menace to put another in fear of imminent serious bodily injury." *Com. v. Reynolds*, 835 A.2d 720, 726 (Pa.Super. 2003) (citing *In re Maloney*, 636 A.2d 671, 674 (Pa.Super. 1994)).

The testimony established at trial that while Lewin, Jalil and Ibrahiim were outside the Jazzland bar talking, defendant came out and started threatening and swearing at them. The situation escalated and defendant took a gun out of his waistband, waived it around, and pointed it at each of the three brothers. Each of the brothers testified that they were frightened for their lives when defendant pointed the gun at them. All of this evidence is sufficient from which a jury could conclude that defendant was guilty of simple assault.

A person is guilty of reckless endangerment when the Commonwealth proves beyond a reasonable doubt that the defendant "recklessly engage[d] in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. 2705. At trial, the evidence established that defendant fired a shot at Ibrahiim while several others were in close

7

proximity outside a public building. Firing a shot in the direction of several people puts those people in danger of death or serious bodily injury because of the threat of a stray bullet. All of this evidence is sufficient from which a jury could conclude that defendant was guilty of reckless endangerment.

A person is guilty of persons not to possess firearms under 18 Pa.C.S.A. §6105(a)(1) when the Commonwealth proves beyond a reasonable doubt that he has been convicted of an offense enumerated in subsection (b) of the statute and then subsequently possesses, uses, controls, sells, transfers or manufactures or obtains a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth. At trial, multiple witnesses identified defendant as the person who pulled a gun out of his waistband, waived it around and fired it outside the Jazzland bar the night Jalil was shot. At trial, the parties stipulated that under the Uniform Firearm's Act, defendant is a person not to possess or own a firearm. As such, the evidence was sufficient from which a jury could conclude that defendant was guilty of persons not to possess firearms.

## WEIGHT OF THE EVIDENCE

Defendant argues that the jury's verdict on all counts was against the weight of the evidence because of conflicting testimony. "The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Com. v. Champney*, 832 A.2d 403, 408 (Pa. 2003). The trial court's verdict may only be reversed if it is so contrary to the evidence as to shock one's sense of justice. *See id.*

"A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict." *Com. v. Rossetti*, 863

A.2d 1185, 1191 (Pa.Super. 2004). "Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner." *Id.* at 1191-92.

Defendant specifically argues that the verdict was against the weight of the evidence because of conflicting testimony concerning when the shooting occurred, the description of the shooter, and whether defendant was present on the night in question. Defendant further explains that the testimony of brothers Lewin, Jalil and Ibrahiim should have been discredited because they were under the influence of alcohol the night of the shooting in favor of the testimony of the Demond Bates, a bouncer at the Jazzland bar, and Mike Burgess, a friend accompanying the brothers that night.

The jury apparently believed that the brothers' recollections of the event were not tainted by the alcohol they consumed while celebrating the reunification with their father after thirteen years. (N.T. 78) Specifically, Lewin testified that, on the night of the shooting, he had three beers and a little bit of straight liquor over a "spaced out" period of time and was "feeling it [its effects] a little bit." (N.T. 81.4; 81.20) Ibrahiim testified that, on the night of the shooting, he had three beers but, as a "regular drinker," he "w[asn't] feeling the effects of [the beer]." (N.T. 130.9-15, 130.24, 131.3-4) Jalil testified that he had about one beer the night of the shooting. (N.T. 223, 246)

Conversely, the jury apparently discredited the testimony of Mike Burgess and Demond Bates. Although defendant emphasizes that Mike Burgess testified that, unlike defendant, the shooter had hair on his head and a beard, Mr. Burgess originally testified that he was not able to see who shot Jalil even though he testified that he was standing five feet away at the time. (N.T. 212.24-213.1, 213.16) Apparently the jury chose to discredit his subsequent description of the shooter. Furthermore, Mr. Burgess testified that, immediately prior to hearing the gunshot, the

9

three brothers were near the bouncer and a man with a black shirt, which is consonant with Lewin, Jalil and Ibrahiim's testimony. (N.T. 212-214) The jury also apparently chose to believe Jalil's testimony that the bouncer, who is defendant's close childhood friend, was smirking and swearing during the confrontation. (N.T. 182, 228-229) In sum, defendant's contention as to conflicting testimony is a credibility issue which is exclusively reserved for the jury.

## EXCESSIVE AND UNREASONABLE AMOUNT OF RESTITUTION AND FINE

Defendant argues that his combined fine and restitution amount of $13,635.26 ($9,635 in restitution and $4,000.26 in fines) is excessive and unreasonable for three reasons: (i) he will probably not be able to pay, (ii) the money will not impact the victim or the community and (iii) paying the money will not deter him from committing future crimes because he will probably be incarcerated for the rest of his natural life.

The standard of review for sentencing determinations is an abuse of discretion. *See Com. v. Walls*, 926 A.2d 957, 961 (Pa. 2007). An abuse of discretion "requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1046 (Pa. 2003). Defendant fails to raise a concern not unlike any other defendant that evidences that the court's decision was clearly erroneous and thus must fail.

10

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
v. : NO. 392 CR 2012
:
ERIC A. CHAMBERS : CRIMINAL ACTION

## ORDER

AND NOW, this 3rd day of October 2013, upon consideration of defendant's post-sentence motions, the Commonwealth's brief in opposition thereto, and oral argument on September 27, 2013,

IT IS HEREBY ORDERED that the said motion is DENIED for the reasons set forth in the attached memorandum opinion.

BY THE COURT:

JUDGE ANDREW H. DOWLING

DISTRIBUTION:
John C. Baer, Esquire, Senior Deputy District Attorney
Ryan Lysaght, Esquire, Assistant Public Defender
Clerk of Courts

11