J-A10028-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
MATEEN KENNEDY   :
  :
Appellant   :   No. 2110 EDA 2017

Appeal from the Judgment of Sentence Entered May 31, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007062-2015,
CP-51-CR-0007063-2015, CP-51-CR-0007064-2015,
CP-51-CR-0007065-2015

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY McLAUGHLIN, J.:       **FILED JULY 12, 2018**

Mateen Kennedy appeals from the judgment of sentence entered on May 31, 2017, after he entered into a non-negotiated guilty plea to numerous charges. Kennedy argues that the trial court should not have accepted his guilty plea and that the trial court failed to state adequate reasons on the record for sentencing him in the aggravated range. We affirm.

According to the statement of the factual basis for the charges to which Kennedy pled guilty, this case arises from a shootout that occurred on March 8, 2015, at approximately 1:08 p.m., outside of a supermarket. Police obtained a copy of a video that showed Kennedy standing outside of the supermarket. He appeared to pull a firearm from his waistband and fired at a male approaching him. The male returned fire, striking Kennedy in his left forearm and abdomen. A bullet shattered the door of the supermarket, inside

_____

*   Retired Senior Judge assigned to the Superior Court.

of which there were approximately ten people, including children. Kennedy ran from the scene, and responding officers eventually apprehended him and took him to a hospital.

The Commonwealth subsequently charged Kennedy in connection with the incident with seven counts: one count each of discharge of a firearm into an occupied structure, firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, possessing instruments of crime ("PIC"), and three counts of recklessly endangering another person ("REAP").[1] Kennedy entered an open guilty plea on January 27, 2016, to all charges. The court conducted an oral colloquy during which Kennedy confirmed that he could read, write, and understand English; was not under the influence of drugs or alcohol; and was not suffering from any mental illness. *See* N.T., Guilty Plea, 1/27/16, at 3-4. The Commonwealth then recited the factual basis for the plea, and Kennedy reviewed and signed Written Guilty Plea Colloquy forms, stating he understood the forms' contents and the forms' contents were accurate. *See* Written Guilty Plea Colloquies at 3.

The Written Guilty Plea Colloquy forms contained, among other things: a notation that there was no sentencing agreement or recommendation; a list of the charges to which Kennedy was pleading guilty and the sentencing exposure for each; a statement that defense counsel had explained the

_____

[1] 18 Pa.C.S.A. §§ 2707.1, 6106, 6108, 907, and 2705, respectively.

elements of each charge to him; and an acknowledgement that he understood the forms' explanation of his jury trial rights and the presumption of innocence. The forms also contained affirmations that "I can understand what is going on," and "[n]obody promised me anything or threatened me or forced me to plead guilty." Written Guilty Plea Colloquies at 1. Defense counsel signed the forms, stating that Kennedy had read and appeared to understand them, and counsel knew no reason that Kennedy could not and did not knowingly, intelligently, and voluntarily plead guilty. The court deferred sentencing and ordered a Presentence Investigation Report ("PSI") and a Mental Health Evaluation.

At a sentencing hearing on May 26, 2016, Kennedy presented mitigating testimony from his mother, his father, and his ex-girlfriend's mother, and letters from his aunt, a former employer, and his youth football coach. N.T., Sentencing Hearing, 5/26/16, at 7-13. He exercised his right of allocution and stated that when released from prison, he wanted to sign up for Community College again and live with his sister.

For its part, the Commonwealth informed the court that Kennedy had been uncooperative with the police in identifying the individual who shot him. The court asked Kennedy if he knew the identity of his attacker, and Kennedy said he did not. The Commonwealth represented that the shooter's face was visible during the attack, which took place in broad daylight, and argued that Kennedy's claim he did not know his attacker was not credible. The trial court suggested that in any event, Kennedy could take the stand at his attacker's

trial and state whether the person on trial was, in fact, his shooter. *Id.* at 17. The court then continued the sentencing hearing.

At the reconvened sentencing hearing, on August 31, 2016, the court again heard from Kennedy's mother and father, and Kennedy expressed his remorse for his actions. The trial court imposed consecutive sentences on each charge, for an aggregate sentence of 12 to 24 years' incarceration followed by six years' probation. The trial court stated that it sentenced Kennedy "for protection of the community, prevention of further crime, rehabilitation[,] and punishment." N.T., Sentencing Hearing, 8/31/16, at 16.

Kennedy filed a motion for reconsideration of sentence, and at a hearing, Kennedy's counsel represented to the court that Kennedy was unable to identify his shooter because he did not know him. Counsel also represented that before sentencing, Kennedy was "willing to look at the video and identify what he could about it," but the Commonwealth was "not interested" because Kennedy "can't identify" his attacker. N.T., Sentencing Hearing, 12/12/16, at 7, 12-13. Counsel stated that the court had not been given this information at the prior sentencing hearing because counsel had been unable to attend the hearing and a colleague had attended in his place. Kennedy also presented additional mitigating testimony from a representative of the Public Safety Initiative, Youth Transformation Project, who stated he wanted to train Kennedy to be a mentor. *Id.* at 11.

The Assistant District Attorney responded to defense counsel's representations by stating, "I think the frustration that the Commonwealth

has with [Kennedy] and I think what Your Honor shared [at the prior sentencing hearing] is him not knowing or – or him not knowing who shot him is incredible." *Id.* at 14. The Commonwealth also informed the court that Kennedy's alleged shooter had not yet gone on to trial. *Id.* at 17. The trial court then vacated Kennedy's sentence, stating, "I'm going to vacate the sentence, start all over again[,] and give you a fair shot." *Id.* at 18.

At a further sentencing hearing, on May 31, 2017,[2] defense counsel again spoke about Kennedy's alleged willingness before his initial sentencing to provide any identification information he possessed. Defense counsel said that he had failed to inform the attorney who attended the initial sentencing hearing about Kennedy's alleged willingness to do so. The trial court then heard from a detective who interviewed Kennedy at the hospital following the shooting. He testified that when he asked Kennedy to name the male who shot him, Kennedy replied, "[Y]ou have the video. Watch the video." N.T., Sentencing Hearing, 5/31/2017, at 13. The detective said he asked Kennedy to identify the shooter twice.

The court then re-imposed the same sentence as before, an aggregate sentence of 12 to 24 years' incarceration followed by six years' probation, with credit for time served. Kennedy received consecutive sentences on each

---

[2] The court scheduled another hearing for February 27, 2017, which was continued to March 17, 2017. On that day, Kennedy's counsel informed the court that the alleged shooter's trial was pushed back until the summertime, and the court deferred Kennedy's sentencing until May 31, 2017, to afford him the opportunity to testify for the Commonwealth. N.T., 5/17/17, at 5-8.

charge as follows: three and one half to seven years' incarceration for possessing a firearm without a license; three and one half to seven years' incarceration for discharge of a firearm into an occupied structure; two and one half to five years' incarceration for having a firearm on the streets of Philadelphia; two and one half to five years' incarceration for PIC; and two years' probation for each count of REAP. The court stated that it was not penalizing Kennedy for not cooperating with police, but rather based on the facts of the case, the guilty plea, and the Sentencing Guidelines. *Id.* at 21. This appeal followed.

On appeal, Kennedy raises two issues:

I.   Did [the trial court] err in accepting [Kennedy's] plea without first assessing whether it was a knowing, voluntary and intelligent relinquishment of his rights?

II.  Did [the trial court] abuse [its] discretion by imposing a sentence far in excess of the Sentencing Guidelines' suggested range without stating a sufficient reason for doing so and for failing to properly consider the abundant mitigating factors placed on the record?

Kennedy's Br. at 5.

Kennedy's first claim --- that that the trial court erred in accepting his guilty plea because his plea was not knowing, voluntary, and intelligent --- is not properly before us. Kennedy waived it by failing to raise it in the trial court either by objecting during the plea colloquy or in a timely motion to withdraw his plea. *See* Pa.R.Crim.P. 720(B)(1)(a)(i); *see also Commonwealth v. Lincoln*, 72 A.3d 606, 609-10 (Pa.Super. 2013). Even if Kennedy had not

waived this claim, we would reject it as meritless. The oral plea colloquy and the signed guilty plea colloquy forms together refute Kennedy's claim that his plea was not knowing, voluntary, and intelligent. *See* N.T., Guilty Plea, 1/27/16, at 3-4; Written Guilty Plea Colloquy forms; ***Commonwealth v. Morrison***, 878 A.2d 102, 108 (Pa.Super. 2005) (*en banc*) (concluding guilty plea was not unknowing and involuntary where defendant signed written guilty plea colloquy form containing statements and information refuting claim).

Kennedy's additional claims that the court failed to state adequate reasons for sentencing above the Sentencing Guidelines for each offense, and failed to consider mitigating factors, are meritless. These claims challenge the discretionary aspects of sentencing and as such, we must conduct a four-part inquiry before reaching the merits of the claims. ***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa.Super. 2013). We must determine whether: (1) the appeal is timely, (2) the instant issues were properly preserved, (3) the appellant's brief contains a statement pursuant to Pa.R.A.P. 2119(f),[3] and (4) there is a substantial question that the sentence is not appropriate under the Sentencing Code. ***Id.***

---

[3] "An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of the sentence." Pa.R.A.P. 2119(f).

In the instant case, Kennedy filed a timely Notice of Appeal and properly preserved his claims challenging the discretionary aspects of sentencing in his Post-Sentence Motion. Kennedy also included a Pa.R.A.P. 2119(f) Statement in his brief. Kennedy's Br. at 24. Finally, Kennedy has presented substantial questions for our review. Kennedy's contention, that the trial court imposed a sentence above the Sentencing Guidelines without stating its reasons on the record, states a substantial question. *See Commonwealth v. Flowers*, 149 A.3d 867, 871 (Pa.Super. 2016). Additionally, his argument that the trial court failed to consider mitigating factors likewise states a substantial question. *See Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa.Super. 2014).

We review discretionary sentencing decisions for abuse of discretion. *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* (citing *Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1046 (Pa. 2003)).

The parties agree that the trial court sentenced Kennedy above the Sentencing Guidelines for three of the charges, and in the aggravated range for the charge of discharge of a firearm into an occupied structure. When imposing a sentence that deviates from the Sentencing Guidelines, the trial court must consider all relevant factors, including the nature of the crime, the

individual character of the defendant, and the individual circumstances of the defendant. ***Commonwealth v. Eby***, 784 A.2d 204, 207-08 (Pa.Super. 2001). Additionally, whenever a court imposes a sentence for a felony or misdemeanor, the court must state on the record its reasons for doing so. ***See*** 42 Pa.C.S.A. § 9721(b). As long as the record demonstrates that the court weighed the Sentencing Guidelines, the facts of the crime, and the defendant's character, we should affirm the sentence. ***Commonwealth v. Begley***, 780 A.2d 605, 643 (Pa. 2001).

Kennedy argues that his "failure or inability to identify his attacker" was not a basis for exceeding the guidelines. Kennedy's Br. at 30. However, the trial court explicitly stated that it sentenced Kennedy based on his decision to plead guilty, the facts of the case, and the Sentencing Guidelines, and not his failure to cooperate with police. N.T., Sentencing Hearing, 5/31/2017, at 21. This argument thus lacks foundation.

To the extent Kennedy intended to argue that, despite stating that it did not sentence him based on any failure to cooperate, the trial court nonetheless improperly gave this factor weight, his argument is both waived and meritless. Kennedy notably provides no legal authority to support a claim that a sentencing court may not consider a defendant's failure to cooperate with

authorities. His failure to do so is not only waiver,[4] it is also unsurprising, since our Supreme Court has held otherwise. *See Begley*, 780 A.2d at 644 (holding sentencing court permissibly relied on defendant's lack of cooperation, to sentence outside of Sentencing Guidelines). Kennedy neither cites *Begley* nor attempts to distinguish it.

Nor does he cite *Commonwealth v. Scott*, 860 A.2d 1029, 1031 (Pa.Super. 2004), and in any event, our decision there is not to the contrary. In that case, we held that a sentencing court may not consider a defendant's failure to cooperate in an unrelated matter. However, Kennedy did not fail to cooperate in an unrelated matter. Rather, he failed to name the man who shot him during the very same altercation that gave rise to the charges to which he pled guilty. This evidence was relevant to demonstrate Kennedy's character and potential for rehabilitation, and was therefore a proper consideration at sentencing. *Begley*, 780 A.2d at 644. Kennedy does not argue that the trial court should have believed Kennedy's assertion that he did not know his attacker, even though he raised that issue in his Pa.R.A.P. 1925(b) statement. Any such argument is therefore waived on appeal. *See Akbar*, 91 A.3d at 235. To the extent the trial court gave this factor weight, if any, it did not abuse its discretion.

---

[4] *See Commonwealth v. Akbar*, 91 A.3d 227, 235 (Pa.Super. 2014), vacated on other grounds by *Commonwealth v. Akbar*, 111 A.3d 168 (Pa. 2015).

Kennedy's further claim that the trial court failed to give proper consideration to mitigating factors is also meritless. The trial court had the benefit of the PSI, and we presume the trial court was aware of and adequately weighed its contents, including mitigating factors. *See Commonwealth v. Griffin*, 804 A.2d 1, 8 (Pa.Super. 2002). Additionally, the trial court heard from members of the community as well as Kennedy's family who spoke about his impact on the community and his ability to change. Thus, we conclude that the trial court did not abuse its discretion in imposing a sentence beyond the Sentencing Guidelines. Therefore we affirm the judgment of sentence.

Judgment of Sentence affirmed.

Judge Ransom did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/12/18